### TEXAS & PACIFIC RAILWAY COMPANY v. WARD COUNTY IRRIGATION DISTRICT No. 1.

No. 3596.  Decided May 16, 1923.

(251 S. W., 212).

**1.—Taxation—Local Improvements—Irrigation District—Right of Way of Railroad.**

Taxes could be lawfully assessed, on an *ad valorem* basis, by an irrigation district organized under the Act of April 9, 1913, Laws, 33d Leg., ch. 172, p. 380 (Vernon's Ann. Civ. Stats. Supp. 1918, arts. 5107-1 to 5107-105) against the property of a railway company consisting merely of a right of way across lands in such district, to meet the cost of irrigation improvements. (pp. 599-605).

**2.—Same—Apportionment of Benefits.**

Though the creation of irrigation facilities is in the nature of a local improvement, of which the expense should be borne by the owners of the property benefited, it was within the power of the Legislature to apportion such benefit, on the basis of its assessed value, against all property real or personal within the district, without regard to its susceptibility to benefit by irrigation. Dallas County Levee Dist. v. Looney, 109 Texas, 326, followed. (pp. 600, 601).

**3.—Same.**

The right of way of a railroad, though a mere easement and dedicated to public use, may be valued and taxed as other property in the irrigation district, real and personal, on an *ad valorem* basis, to meet the cost of irrigation improvements by such district. Wharton County Drainage Dist. v. Higbee, 149 S. W., 381; Hester & Roberts v. Irrigation Dist., 239 S. W., 995; Dallas County Levee Dist. v. Looney, 109 Texas, 326, followed. (pp. 602-605).

**4.—Constitutional Law—Discrimination.**

Though the Irrigation Law gave only to owners of the fee the right to petition the directors of the district to have their land excluded from its limits because incapable of irrigation, it may be queestioned whether a
Vol. 112—38

railroad, having a perpetual easement amounting to dominion over the land, could not avail itself of this statute, though not the owner of the fee. (p. 606).

5.—Same.

Though the right of owners of the fee to petition the directors of an irrigation district to have their land excluded therefrom should be held not to apply to a mere owner of an easement, the statute was not rendered invalid thereby for such discrimination. The Legislature, and the Commissioner's Court and district directors under its authority, had power over the boundaries of the district; and the owner of an easement was no more discriminated against than owners of personal property or of liens on real estate. (pp. 605-607).

Questions certified from the Court of Civil Appeals for the Eighth District in an appeal from Ward County.

The Supreme Court, having referred the question to the Commission of Appeals, Section B, for its opinion, here adopts and certifies same to the Court of Civil Appeals as its answer.

*John B. Howard* and *Clem Calhoun* (*R. S. Shapard* and *Robert Thompson*, of counsel) for appellant.

Lands used and occupied by a railroad company under a right of way easement cannot lawfully be used by said company for farming or cultivation, or for any other purpose than the occupancy of its tracks and appurtenant facilities, or for uses directly incident thereto, and hence are not susceptible to irrigation within the meaning of the statute. Article 6532, Revised Civil Statutes of 1911; Lyon v. McDonald, 78 Texas, 71; Calcasieu Lumber Co. v. Harris, 77 Texas, 18; Railway Co. v. Oakes, 94 Texas, 155; Muhle v. Railway Co., 86 Texas, 459; Railway Co. v. Mott, 98 Texas, 91; Elliott on Railroads, secs. 41, 1170.

Since appellant merely owned a right of way easement in the lands used and occupied by it within Ward County Irrigation District No. 1, and did not own the same in fee, it was not privileged to file with the Board of Directors of said district a petition praying that such lands be excluded and taken out of said district, but same being not susceptible to irrigation within the meaning of the statute, and it being the manifest purpose and intent of the Legislature that only such lands as might be irrigated should be included within such district for the purposes of taxation, it was not lawful to assess against and undertake to collect from appellant taxes on the aforesaid lands by virtue of the interest held by it therein.

The question of what is or is not a valid levy to make provision for the cost of public improvements calling for an unusual or extraordinary expense, so as to equalize same as far as possible between various property units asserted to be benefited thereby, has had the consideration of the courts of last resort both of Texas and of the

United States in a number of cases. Perhaps the most authoritative case on this subject in this state is that of Hutcheson v. Storrie, 92 Texas, 685, in which it was held, in a lengthy opinion handed down by Mr. Justice Brown, that a tax for special street improvements assessed against the owners of abutting property in proportion to frontage thereof and without regard to special benefits accruing to the property, is violative of the above mentioned constitutional provisions. The conclusion of the court, as expressed in the syllabus, was that, "the legislature cannot authorize a municipal corporation to assess upon abutting property the cost of a public improvement in a sum materially exceeding the special benefits which that property may derive from the work." See also: Kansas City S. R. Co. v. Road Imp. Dist., 41 Sup. Ct. Reporter, 604; Norwood v. Baker, 172 U. S., 269.

By paragraph 17 of the Revised Statutes, provision is made for the owner or owners of the fee of any land constituting a portion of any irrigation district organized thereunder filing a petition with the board of directors of such district to have lands excluded from the district, the evident purpose of this being to meet the holding in the Hutcheson v. Storrie case, *supra,* that such an assessment of taxes as was made therein without the opportunity for a hearing on the question of benefits is a nullity, and not void merely as to so much as may be shown to be in excess of the benefits derived, if any. Not being the owner of the fee to the land, appellant was afforded no opportunity to pray that its right of way easement be excluded from the district. Had it filed such a petition, even though within the time stipulated, the board of directors would have been without authority to give it consideration. It accordingly would seem to be a self-evident proposition that for this reason alone the tax sought to be collected by appellee is illegal, and hence that the judgment rendered against appellant therefor is wholly void and without effect.

*W. A. Hudson, P. E. Starley, H. G. Russell,* and *Birge Holt,* for appellees.

The entire case of the appellant is fully discussed in the case of Wharton County Drainage District v. Higbee, 149 S. W., 381, in holding such a district to be a political subdivision, having the general taxing power, that its organization and power can not be attacked in a tax suit, and a discussion of the cases presented by appellant holding that the rule of special improvement assessments is not applicable, but the rule applying to a general *ad valorum* tax for public improvements. This is followed by this court in Wheat v. Ward County Water Improvement District No. 2, 217 S. W., 713; also in Parker v. Harris, County, etc., 148 S. W. 351. These authorities are supported by the recent decision of the Supreme

Court in Dallas County Levy District v. Looney, 109 Texas, 326, 207 S. W., 310. See also the opinion of this court, Barstow v. Ward County Irrigation District No. One, 177 S. W., 563; Fallbrook Irrigation Co. v. Bradley, 164 U. S., 176; Hester & Roberts v. Donna Irrigation District, 239 S. W. 995; G. C. & S. F. Ry. Co. v. Ellis, 70 Texas, 307, 7 S. W. 722; Holt v. State, 176 S. W., 743; Kinney, Irrigation and Water Rights, pages 2534-2536.

In the advance sheets of the Supreme Court Reporter, we find a very recent case decided by the Supreme Court of the United States, Valley Farms Co. of Yonkers v. Westchester County, 43 Supreme Court Reporter, 261, in which the Supreme Court holds:

"The legislature of a state can create a tax district and levy therein a general tax based on the assessed valuation of all property in the district, to pay for public improvements, so long as its act does not amount to a flagrant abuse or purely arbitrary exercise of its power.

MR. PRESIDING JUDGE McCLENDON delivered the opinion of the Commission of Appeals, Section B.

This suit was brought by Ward County Irrigation District No. 1 against Texas & Pacific Railway Company. For convenience the parties will be referred to respectively as the Irrigation District and the Railway Company. The suit was to recover the amount of taxes regularly levied and assessed by the Irrigation District for the years 1914 to 1919, inclusive, and to foreclose the statutory tax lien upon the right of way of the Railway Company traversing and included in the Irrigation District.

The Railway Company defended upon the ground that the tax upon its right of way was invalid in that its right of way was not and could not be benefited by the Irrigation District and in that, as it did not own the fee thereto, it was denied the right to a hearing upon whether its property should be included in the district; for which reasons it was contended that the levy of the tax upon its property was in violation of the constitutional provisions of the State and Nation as being the taking of private property without due process of law and the deprivation of the Railway Company's rights to the equal protection of the law.

The cause was tried to the court without a jury upon an agreed statement of facts and resulted in a judgment in favor of the Irrigation District for the full amount of the tax with statutory penalties, interest, and costs, and foreclosure of the tax lien upon the railway right of way within the district. The cause was appealed to the Court of Civil Appeals; and that court has certified to the Supreme Court the following question:

"Upon the facts stated, is the assessment valid against the es-

tate of the Texas & Pacific Railway Company on the said land occupied and used by it as a right of way?''

From the agreed statement of facts and the certificate it appears that the Irrigation District was duly organized under the provisions of chapter 87 of the 35th Legislature, later becoming articles 5107-1 to 5107-105 of Vernon's Sayle's Civil Statutes of 1914. The Irrigation District was regularly organized in every respect and no question in that regard is raised. The Railway Company's right of way, upon which its tracks are constructed, extends across the district for 5-7/8 miles. The Railway Company does not own the fee to any of this right of way, it having been acquired partly under our statutes authorizing the building of railroads over public lands, and partly by condemnation. This right of way was regularly assessed for the years named and no question whatever is suggested with regard to the regularity of the proceedings under which the assessment was made, the amount of the tax being calculated upon the uniform rate throughout the district as applied to the valuation placed by the proper officers of the Irrigation District upon the right of way. The record contains no description of the district showing the position of the right of way with reference to the proposed or constructed irrigation system or to other lands within the district; and no showing whatever as to the amount of lands in the district, their assessed value, or the proportionate amount of the whole tax assessed against the Railway Company. The questions in the case, therefore, are confined to the power of the State to impose the tax upon a railroad right of way and the validity and application of the statute as applied to this particular tax.

Section 52 of Article 3 of the Constitution of 1876 prohibited the lending of credit or granting of money or other aid by any political subdivision of the State to any individual association or corporation. In 1904 this article was amended by adding thereto the following:

''Provided, however, that under legislative provision any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the State or any defined district now or hereafter to be described and defined within the State of Texas, and which may or may not include towns, villages or municipal corporations, upon a vote of a two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby, in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, except that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other provisions of this Constitution, and levy and collect such taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and

in such manner as it may authorize the same, for the following purposes, to-wit:

"(a) The improvement of rivers, creeks, and streams to prevent overflows, and to permit of navigation thereof or irrigation therefrom, or in aid of such purposes.

"(b) The construction and maintenance of pools, lakes, reservoirs, dams, and waterways for the purposes of irrigation, drainage or navigation, or in aid thereof."

Subdivision (c) has no relevancy here and is therefore omitted.

Later in 1917 what is known as the conservation amendment, which became section 59 of Article 16 of the constitution was adopted. No further reference, however, need be made to that amendment, since the Irrigation District was organized under the prior amendment and legislative enabling acts, and the conservation amendment has been held by the Supreme Court not to have affected the amendment of 1904. Dallas County Levee District v. Looney, 109 Texas, 326, 207 S. W., 310.

In 1905 the legislature passed an act providing for the organization of irrigation districts. This act was embodied in chapter 3 of title 73 embracing articles 5012 to 5107 of the Revised Statutes of 1911. In 1913 this act was repealed and a new and comprehensive irrigation law was passed. (Vernon's Sayle's Revised Civil Statutes of 1914, articles 5107-1 to 5107-5, inclusive.) This law provides for the establishment of irrigation districts by the county commissioners' court upon petition of a majority of the holders of title or evidences of title to lands situated within the proposed district, representing a majority in value as indicated by the county tax rolls. Without going into particular details, the law provides generally for the publication of notice and hearing upon such petition, findings of the commissioners' court thereon and appeals by interested parties from an order granting or dismissing the petition. If the commissioners' court find in favor of the petition, an election is called for the purpose of determining whether the district shall be created. At such election all resident property taxpayers who are qualified voters are entitled to vote. In order to establish the district, two-thirds of the electors voting must cast a favorable vote. At this election five directors, who constitute the governing body of the district, and an assessor and collector are voted for. If the district is formed, taxes are levied and assessed upon an ad valorem basis in the same manner, generally, as state and county taxes, and a board of equalization of the district is provided with the same general powers as county boards of equalization. Substantially the same procedure of assessment and equalization of taxes, notice, and other details are provided for in the act as apply generally to the assessment, equalization and collection of state and county taxes. The district has, generally speaking, the power to acquire all necessary

property, to construct irrigation plants, and acquire irrigation plants already constructed, with all incidental powers, including the right of eminent domain, and is a municipal corporation and taxing district for the purposes of the act. Bonds may be issued after an election at which only resident taxpayers who are qualified voters in the district are entitled to vote; and to authorize a bond issue, a two-thirds vote of the qualified resident taxpaying electors voting at the election is required. Article 5107-17 provides:

"The owner or owners of the fee of any land constituting a portion of any irrigation district may, within thirty days after the election, qualification and organization of the first board of directors for such irrigation district, file with said board a petition praying that such lands may be excluded from and taken out of said district. The petition shall describe the lands which the petitioners desire to have excluded by metes and bounds, and such petition must be acknowledged in the same manner and form as is required in cases of conveyance of real estate. (Id. sec. 17.)"

Article 5107-18 provides for notice of the hearing of such petition. Article 5107-19 reads:

"The board of directors, at the time and place mentioned in such notice, shall proceed to hear the petition and all objections thereto, and shall determine whether or not said lands or any portion thereof, shall remain as a portion of such district; and if upon such hearing said directors shall determine that the land desired to be withdrawn from said district or any portion thereof is not susceptible to irrigation from the system proposed to be provided; then such non-irrigable lands shall be excluded therefrom; provided, however, that in the event such petition is not filed within thirty days from the date of the qualification of the first board of directors; then no such petition shall thereafter be filed or considered by such board, and such excluded lands and the owners thereof thereby waive all rights to be served with water from such irrigation system. (Id. sec. 19.)"

The act provides that all taxable property, both real, personal, and mixed, situated within the district shall be assessed annually for taxation upon an ad valorem basis. (Sec. 5107-25, et seq.)

It will be observed that the amendment of 1904 confers upon the Legislature ample authority to create taxing districts for the purpose of promoting irrigation, and the enabling statutes have provided a system for the establishment, government and support of such districts, under which, when formed, they are taxing districts to all intents and purposes, not essentially different from counties, cities or other municipal corporations within the general powers and purposes for which they are created. The Legislature has provided the method for their creation and for defining their territorial limits, delegating certain powers to the resident taxpayers who are quali-

fied voters and certain powers to the Commissioners' Court. The initial step in the creation of a district is by the taxpaying electors by petition to the Commissioners' Court. With that court rests the power of determining whether an election shall be called to decide whether the district shall be created and also of determining the boundaries. In the taxpaying electors is reposed the power by election to create or not the district and to choose the officers. In the individual land owner is reposed the right to petition the governing board to have his lands excluded from the district, and that board is no doubt vested with the discretion within proper limitations of determining whether such petition shall be granted. When a district is thus regularly formed, the statutes, which apply alike to all districts created under it, make all property, real, personal, and mixed, within the territorial limits of the district, subject to an ad valorem tax, the amount of which within constitutional and statutory limitations rests with the board of directors of the district, and the porportionate amount assessed upon each piece of property is determined by its value, which is fixed in the same manner provided generally by law for the levy, assessment, and collection of taxes for the support of the state and county governments.

The power of the State to create such districts and to tax the property within their territorial limitations to meet the legitimate expenses and debts created by their governing boards is not now an open question. The reclamation of arid lands by irrigation has long since been held by the highest courts of the land to be a matter of public interest and its promotion a legitimate function of government.

No doubt the power inheres in the State to promote and support public improvements of this nature by general taxation, without regard to benefits to the property taxed. There is no essential difference, from the viewpoint of the public interest therein, between an irrigation system for the purpose of cultivating arid lands, and a drainage system for the purpose of reclaiming swamp or overflow lands. The Supreme Court of the United States, speaking through Mr. Justice Hughes in reference to the latter character of enterprise, said:

"In view of the nature of this enterprise it is obvious that, so far as the Federal Constitution is concerned, the state might have defrayed the entire expense out of state funds raised by general taxation, or it could have apportioned the burden among the counties in which the lands were situated and the improvements were to be made." Houck v. Drainage District, cited below.

The courts in the main, while recognizing the public interest in this subject and the governmental power to construct and maintain irrigation and similar projects by means of taxation, have, however, treated such projects when supported by local districts created for that purpose as belonging to that class of public enterprises commonly known as local improvements and while upholding the imposition

of a tax upon the property owners within the vicinity, have based such holding upon the theory of such benefits as are peculiar to such property by reason of the improvement as distinguished from those benefits which inure to the public at large. Levee District v. Looney, above. Various methods of apportioning these benefits have been resorted to. In some instances the legislature itself, by arbitrary rule, determines that question by fixing some uniform method of making the assessment, such as foot-frontage, superficial areas, etc., and value of the property, as in the case of raising revenues generally. In other cases the legislature has left the matter of assessment of benefits to be determined by some board or court under designated procedure. In the cases where the Legislature has itself fixed the amount of the benefits or an arbitrary method of ascertaining them, it is quite generally held that the action of the Legislature in this regard is not subject to review by the courts. Manifestly the effect of any particular improvement or public work upon any particular property is incapable of mathematical calculation or demonstration. There are so many elements which enter into the value of property, especially of real estate, that it is impossible to ascertain what effect any particular undertaking may have upon it. It may be fairly assumed that the natural effect of any public work is to enhance in some degree the value of property within reasonable proximity to the improvement. The possible and probable effect as to enhancement in value upon each particular piece of property is subject to as great a variety of opinions as there are varieties in location, distance, use, etc., as applied to each individual piece of property. The Legislature is as well qualified as any body or court to determine these matters and the court have wisely decreed that when it has determined them, its enactments are final, ''unless the method prescribed is one so arbitrary and unfair as to amount to an abuse of legislative power.'' Levee District v. Looney, above. Quoting further from that case:

''It cannot be said as a matter of law that a rule which apportions taxes of this character according to the value of the property affected is one plainly arbitrary and unfair. It is a veteran rule for the apportionment of property taxes, sanctioned by immemorial usage and universally applied. It is the one most familiar to the people. Its general justice is not open to challenge. It is an approved method for the apportionment of taxes of this kind. Its adoption was a matter of legislative discretion.''

The principles above announced are quite generally settled by adjudications of courts of last resort throughout the country. The legal literature upon this subject affords interesting and instructive study, but is too voluminous for review in the appropriate limits of this opinion. Only a few illustrative cases need be cited. Modesto Irrigation District v. Tregea, 88 Cal., 334, 26 Pac., 237; Fallbrook

Irrigation District v. Bradley, 164 U. S., 112, 41 L. Ed., 369; Houck v. Drainage District, 239 U. S., 254, 60 L. Ed., 266; Branson v. Bush, 251 U. S., 182, 64 L. Ed., 215.; Kansas City S. Railway Co. v. Road Improvement District, 256 U. S., 658, 65 L. Ed., 1151; Valley Farms Co. v. Winchester County, 43 Sup. Ct., 1261, 67 L. Ed., 323; Thomas v. Railway Co., 43 Sup. Ct., 440, 67 L. Ed., 475.

Treating the law, therefore, as creating a tax for local improvements, to which must be applied the doctrine of special benefit to the property taxed, we have no doubt of the power of the Legislature to include the right of way of a railway company within the taxing district and to impose upon the right of way an ad valorem tax for the support of the district. There are a number of cases in which the right of way of a railway company is treated as property dedicated to public use in determining its status with reference to local improvements. We will not attempt a review of these cases, but it may be said in passing that the assessment sought to be imposed was under some statute or municipal regulation imposing the assessment upon the basis of actual benefits to each piece of property sought to be assessed and the courts in those cases in which they have held the assessment invalid have done so upon the ground that the right of way of the railway company, being devoted to railroad purposes, and not being susceptible of any other use, could not be treated as other property as to the use of which there was no restriction, and the effect of the improvement upon the value of the right of way must be limited to the effect under the restricted use for right of way purposes. The authorities upon this point are by no means in harmony and it is unnecessary for us to discuss them.

We have not found that this rule has been applied to railroad property within local improvement districts where the assessment is made upon an ad valorem basis and we are clear in the view that the particular use to which real estate or an interest in real estate may be dedicated, unless it be a use which would exempt it from taxation altogether, has no bearing upon the question of exempting property within a district created as provided by the statute under consideration. It will be observed that the Constitution itself provides that cities may be embraced within irrigation districts. This was true of the California law, which was the pioneer in this character of legislation. The power to subject city or other property which, by reason of its improvements and uses, or its relation to the irrigation project, would not be directly served and therefore not specially benefited thereby, has arisen frequently in the California courts and has reached the Supreme Court of the United States with the uniform result of upholding the power. Modesto and Fallbrook cases, above. Cases which hold that after a district has been properly formed any real estate included therein is exempt from taxation merely upon the showing that the use to which it has been put or dedicated creates

an exemption from the tax are rare. The particular question of the power of an irrigation district to tax a railroad right of way, where the railroad company did not own the fee, arose in the case of Oregon Short Line Co. v. Pioneer Irrigation District, 16 Idaho, 578, 102 Pac., 904, and in a very elaborate and well considered majority opinion it was held that the property was taxable. We quote from the opinion in that case:

"The question whether lands proposed to be incorporated within an irrigation district will be benefited has reference to the land in its natural state, and not to the use to which the land is being put at the time the district is organized. We think this construction clearly appears from the language of the statute. In the very nature of things, an irrigation district must cover an extensive area of land, and if only land requiring the application of water, because of the use being made of it at the time the district is organized, can be included within the boundaries of the district, then it might be impossible to create such district out of contiguous territory; and the commissioners would be required to exclude from the boundaries of such district tracts of land which, although the same did not require water at the particular time of the organization of such district, yet upon the happening of some event would be placed in the same condition as other lands requiring water at the time of the organization of such district; and the boundaries of the district would necessarily include therein much land of irregular description which would be excepted from the operation of the district irrigation law. We do not believe that this was intended by the statute, but, on the contrary, that the board of commissioners are authorized and empowered to incorporate within a proposed irrigation district such lands as in their natural state would be benefited from the system of works proposed. We are satisfied that by the enactment of the irrigation law under consideration the Legislature intended to confer jurisdiction and power upon the board of county commissioners to include within the boundaries of an irrigation district all lands which in their natural state would be benefited by irrigation and are susceptible of irrigation by one system, regardless of the use to which any particular tract of land may be put at the time the district is organized; and although such use may be of such a character as to render such land unfit for cultivation, and make it unnecessary to apply water to such land to aid in the use to which the same is put.

"It seems reasonable, and we believe we are justified in concluding, that although water may not be applied to a beneficial use upon a particular tract of land in an irrigation district, yet if a system of irrigation is provided by the district from which the lands of such district are irrigated and thereby benefited, it necessarily benefits all lands of the district, whether any particular tract may re-

quire or use thereon the water provided by such system. If this be true, then it would follow that although the right of way and station grounds of the railway company were not in a condition to have water applied to such lands in the use made of them at the time the district was organized, yet such lands would necessarily be benefited by reason of the fact that the application and use of the water from such system to other lands adjacent and surrounding the lands of the railroad company benefited such lands. The question of benefits, however, to the lands using water and the lands not requiring water is one merely of degree, and the extent of the benefits assessed to the lands of the district is a matter committed to the jurisdiction of the board of directors of such district.''

The power to tax personal property upon an ad valorem basis in a local improvement district has been upheld whenever the question has arisen in this state. Wharton County Drainage District v. Higbee, 149 S. W., 381; Levee District v. Looney, above; Hester v. Irrigation District, 239 S. W., 995. In the Higbee case in which the tax was imposed to support a drainage district, Judge Reese of the Galveston Court of Civil Appeals, after a very full discussion of the entire question of local assessments, reached the conclusion that the Legislature had the power to create the district and for its support to impose a tax upon all property real and personal within its territorial boundaries upon an ad valorem basis. In the second case cited the Supreme Court upheld the tax upon personal property by a levee district, viewing the tax solely as for a local improvement. The question is not discussed at length, but is disposed of in the following quotation:

''That the Canales Act permits the taxation of other than real property within a levee district for the purpose of the improvement presents no constitutional objection. It cannot be said that personal property situated within such a district does not derive a certain benefit from the improvement. It, with real estate, is equally subject to damage from overflow, and with perfect justness may be taxed for such an improvement. Gibson v. Board of Commissioners, 128 Ind., 65.''

In the Hester case the validity of an irrigation district assessment upon a store building in the town of Donna and personal property within the district was questioned and both assessments upheld. In both of the above cases by the Court of Civil Appeals, the Supreme Court denied writs of error. We therefore consider it settled in this State that an assessment upon personal property located within a local improvement district is valid and that the particular use to which real estate may be dedicated does not exempt it from the tax.

If personal property within an irrigation district is subject to be taxed upon an ad valorem basis and if privately owned real estate, regardless of its use, is also subject to such taxation, we are unable

to conceive upon what principles the right of way of a railroad company can be held exempt. The fact that the railroad company may use it and may be able to use it only for railroad purposes, we think is not material to the inquiry. Railroad property, whether right of way or of other character, is not dedicated to a public use in the sense that it is exempt from taxation and for taxation purposes is treated as the property of a private individual. Our Constitution (Art. 8 sec. 8.) makes it taxable within the locality in which it is situated, just as real estate in such locality. Whether it runs through the heart of a great city or over rich lands in a highly developed agricultural community, the value of the right of way is affected by its location and is worth more than where it traverses the desert. It may, it is true, not bring any more revenue to its owner by virtue of its location, but its intrinsic and market value is just as much affected by conditions in its vicinity as is the value of property devoted to any other use. In assessing the value of a railroad right of way for general taxing purposes it could hardly be questioned but that the market or intrinsic value of the land embraced within it is a proper element to be considered, and that that value is fixed by the same conditions which fix the value of property adjacent to it which is devoted to other purposes and fluctuates as does the value of adjacent property. A railroad built through a portion of the black land district of Texas half a century ago when the value of the land was nominal compared to its present value has enhanced in value since its construction so far as the right of way is concerned, just as the adjacent lands have enhanced. And so a railroad right of way through an arid portion of the state is enhanced in value by the creation of an irrigation district embracing it just as adjacent lands are thereby enhanced. The fact that the railroad company cannot take advantage of such enhancement by irrigating and cultivating its right of way does not, we think militate against the proposition that there is an enhancement or probability of enhancement sufficiently real and tangible to warrant the imposition by the Legislature of a tax for local improvement in the nature of an irrigation project.

But aside from any enhancement in the value of the property occupied by the right of way it has been held not improper, in determining the power to tax for a local improvement, to consider "the obvious fact that anything that develops the territory which a railroad serves must necessarily be of benefit to it." Branson v. Bush, above.

Both upon reason and authority, we think a railway right of way may properly be placed in a local improvement district of this character; and that when so placed it is subject to the tax imposed by the district in the same manner as other property therein.

The only remaining question which the case presents is whether the irrigation district statute is discriminatory in that it only per-

mits the owner of the fee of the land to petition the board of directors of the district to exclude their land from the district. The statute, it will be observed, gives this right only to the owner of the fee and by strict construction the railroad company in the present instance, being only the owner of a right of way easement, would be denied that right. We are not prepared to say that the statute should be given this limited construction. The railroad company is the owner ·of a perpetual easement which for most purposes is as full and.complete a dominion over the land itself as that of an owner in fee. And it may well be that for the purposes of this statute the railroad company might be regarded as coming within the class of owners given the right of petition. If so, the railroad company has or had the same remedy in this regard as other land owners in the district. In .the case of Village of St. Bernard v. Kemper, 60 Ohio St., 244, 45 L. R. A., 662, the Supreme Court of Ohio held that a lessee in possession under a ninety-nine year lease of real .estate providing for an annual ground rental, the failure to pay which would forfeit the lease, was the owner of the property within the meaning of a statute, which limited the amount of a local improvement tax for street improvements to a certain percentage of the cost of the improvement unless three-fourths of the owners of the abutting property should sign a petition to have the entire cost assessed against the abutting owners.

Assuming, however, that the railroad company, as the owner only of an easement over the land through the district, was not entitled to the right to petition the board of directors to have its property ex-. cluded from the district, this fact, we think, does not constitute in any sense such a discrimination against the railroad company·or its property as would invalidate the imposition of the tax upon it. The law would have been valid had it contained no provision for excluding nonirrigable lands by petition. Subject to the right of attack .for fraud or palpable mistake, the matter of the boundaries of the district could be legally delegated to the Commissioners' Court or the board of directors of the district. In giving the right to owners of land by petition to have their land excluded from the district, it was entirely competent for the Legislature to limit that right to owners of the fee. It was not essential that everyone having an interest in the land should be given the right. The holder of a long term lease upon real estate in the district might be equally interested with the owner of the fee in having the land excluded from the district. But that fact, we think, would not make it incumbent upon the Legislature to grant the right of petition to the holder of a leasehold interest; and the same rule would apply to the holder of a mortgage or other lien upon real property, as well as to those holding interests or title therein, less than the fee. The owners of personal property are denied any right of petition; and if it be competent to so

deny them, it is certainly competent to deny to owners of an interest in real estate less than the fee the same right. In determining the question whether the district shall be formed the electors are limited to resident taxpaying real estate owners who are qualified voters, and the same qualification for electors to support a bond issue is required. Owners of land not resident in the district and corporations who own land in the district are excluded from any voice in these matters. That the Legislature has the power to require such matter to be determined in this manner is not open to question. Nor do we think that the denial of the railroad company of the right to vote in these elections is in any sense any less a discrimination against it and its property than the denial of the right to petition the directors to have the property excluded from the district.

We have no doubt of the right of the railroad company to question the acts of the Commissioners' Court or directors of the district where they are clearly fraudulent or palpably erroneous. And what we have said has no application to such state of facts. Levee District v. Looney, above; Wilmarth v. Reagan, 242 S. W., 726. Nor do we question the right of any property owner to contest the validity of a tax, even upon an ad valorem basis, where it clearly appears to be unreasonable and unjust, under the facts of the particular case. Thomas v. Railway, above. But in the absence of fraud, mistake, or palpable injustice, of which there is no suggestion in the present case, we think the action of the Commissioners' Court in defining the limits of the district binding upon all property owners of every character within the district, regardless of whether they are included within the statutory provisions giving the right to petition the directors of the district to exclude their property from its boundaries.

It is our conclusion that the certified question should be answered in the affirmative.

### BY THE SUPREME COURT.

The opinion of the Commission of Appeals answering certified questions is adopted and is ordered certified to the Court of Civil Appeals.

<div align="right">

C. M. CURETON,
Chief Justice.