## CENTRAL POWER & LIGHT CO. v. JOHNSTON et ux.

### No. 8333.

Court of Civil Appeals of Texas. San Antonio.
Jan. 29, 1930.

Rehearing Denied Feb. 19, 1930.

Frank M. Kemp, of Dallas, Proctor, Vandenberge, Crain & Mitchell, of Victoria, J. M. Wilson, of San Antonio, and R. L. Daniel, of Victoria, for appellant.

Fly & Ragsdale, of Victoria, for appellees.

FLY, C. J. ■ J. R. Johnston and Mattie Johnston, husband and wife, sued appellant, alleging that on or about June 15, 1927, they owned 360 acres of land in Victoria county, and that on or about said date appellant entered thereon and erected wooden poles and strung thereon metallic wires, which were after erection highly charged with electricity transmitted from its generating plant in the city of Victoria to other places; that said wires "carried a tremendous voltage capable of producing instant death to all animal life coming in contact therewith, and also calculated to ignite and consume by fire all houses, trees, grass and other inflammable material with which it might come in contact." It was further alleged: "In the building of said high power line defendant, without any regard for the rights of plaintiffs, cut down and destroyed many of their pecan trees and cut the limbs of other trees and otherwise damaged them, all of said trees being producing or capable of annual production and of great value, and were destroyed and damaged without plaintiffs' knowledge or consent. The limbs and brush from the fallen trees were left in large piles upon plaintiff's land causing the destruction of the growing grass and the roots and sod. The building of said high power line across plaintiffs' land constitutes a perpetual menace to life and property, and the public generally fears said power lines and avoids coming into proximity to them, and the building of said power line has greatly depreciated the market value of plaintiffs' land."

It was further alleged that plaintiffs had given written permission to appellant for "the right to erect its high power line over the tract of land herein described, for a consideration of sixty-three ($63.00) dollars paid to plaintiffs by defendant, but in this connection plaintiffs aver that it was expressly stated to plaintiffs by defendant's right-of-way agents, at the time, that said sum of money did not include plaintiffs' compensation that they might sustain by the building of said high power transmission line, but that all such damages, if any, would be paid for by defendant to plaintiffs forthwith upon the completion of said line, and plaintiffs aver that said consideration only embraced the right to erect poles on said land and to string transmission lines thereon and did not comprehend the damages herein sued for." Appellees also allege that J. R. Johnston did not have mental capacity to execute the permit and that Mrs. Johnston "has little education, no business training and comprehension of the gravity and magnitude of the danger involved in maintaining a high power transmission line over her property, and was wholly unfamiliar with the operation and nature of such electrical system at the time said instrument was executed," and it was claimed that the permit was invalid. Appellant answered with a general demurrer and general denial. The general demurrer was overruled and the cause submitted to a jury on two special issues.

■ While the petition was contradictory and inconsistent in its allegations, and did not in clear terms set up any damages, and was therefore open to special exceptions, it was not subject to general demurrer. General demurrers to petitions are sustained when they fail to state causes of action, but inconsistencies and contradictions must be reached by special exceptions. Appellant cites no authority holding otherwise. The first three propositions are overruled.

■ The written instrument executed by appellees gave to appellant "an easement or right-of-way for an electric transmission, consisting of variable numbers of wires, and all necessary and desirable attachments and appurtenances, including poles made of wood, metal or other materials, telephone and telegraph wires, props, guys, and anchorages," over and upon appellees' land. Appellees admit giving the written permit to appellant in their pleading, and acknowledged receipt of the consideration named. Not only did the contract give the easement, but it specially authorized appellant "to remove from said lands all trees and parts thereof or other obstructions which endanger or may interfere with the safety or efficiency of said line, or its appurtenances, and the right to exercise all other rights hereby granted." Under that instrument appellant had the authority to remove trees or parts thereof that obstructed its right of way across said land, and there would be no ground for recovery unless it was shown that appellant had unnecessarily destroyed appellees' trees. If the timber was thick and so closely covered the ground as to prevent a reasonable right of way for the

764

electrical lines through it, under the terms of the contract appellant had the right to remove the obstructions. If the contract was procured by fraud and deceit, that would, of course, have permitted a ground for its cancellation. However, the evidence fails to show fraud in procuring the execution of the instrument, and no such issue was submitted to the jury.

The special issue submitted to the jury was: "Did the erection of the high powered line and the cutting of the timbers off of plaintiffs' land along the right-of-way of said high powered line cause any decrease in the market value of plaintiffs' lands described in their petition?" The damages arising from the erection of the line across the land and the destruction of the trees were all pleaded together, and there was no means provided by the pleading of arriving at a separation of the damages and determining what arose from one cause and what from another. Under the terms of the contract appellant had the right and authority to run the line across the tract of land, and no damages could possibly arise from the fears of the public or in any other manner from the mere erection of the wires in the usual manner, unless the contract was obtained by fraud or deception. It follows that no damages under proper pleading could be recovered except for trees unnecessarily destroyed or injured, and such damages as might have arisen from piling trees, limbs, or brush on the land of appellees.

It is unnecessary to discuss the different propositions separately.

The judgment is reversed, and the cause remanded.