## M. & M. PIPE LINE CO. v. MENKE.
### No. 7597.

Court of Civil Appeals of Texas. Austin.
Oct. 22, 1931.

Rehearing Denied Nov. 18, 1931.

Julius H. Runge, of Dallas, Allan B. Hannay, of Houston, and C. D. Duncan, of Bellville, for appellant.

Krueger & Sullivan, of Bellville, for appellee.

McCLENDON, C. J.

Menke sued the pipe line company to recover (among other items not involved in this appeal) damages for the death of thirty-two head of cattle from Texas fever (and certain incidental damages in the way of care and dipping), the result of their escape from Menke's 2,360-acre pasture into tick-infested territory through breaches in the pasture fence made by employees of the pipe line company in the course of laying a pipe line through the pasture. Menke recovered judg-

ment upon a special issue verdict, and the pipe line company has appealed.

The appeal is predicated upon propositions to the effect that the following defenses were established as a matter of law:

1. Under a proper construction of an easement contract executed by Menke in favor of the pipe line company, the latter acquired the right to breach the fences where and when necessary to the exercise of its rights under the contract, was liable only for damage to the fences, and was neither obligated nor had the right to rebuild or repair the fences.

2. Contributory negligence on Menke's part in permitting the introduction of infected cattle and other animals into his pasture.

The pertinent portions of the easement contract follow: For a recited cash consideration of $113.80 Menke conveyed to the pipe line company, "its successors and assigns, the right of way and easement to construct, maintain, operate pipe lines and appurtenances thereto, and to construct, maintain and operate telegraph and telephone lines in connection therewith, together with the necessary poles, guy wires and anchors, over and through the following described land * * *. To have and to hold unto the said grantee, its successors and assigns, so long as such lines and appurtenances thereto shall be maintained, with ingress to and egress from the premises, for the purpose of constructing, inspecting, repairing, maintaining and replacing the property of grantee above described, and the removal of such at will, in whole or in part. The said grantor is to fully use and enjoy the said premises, except for the purposes hereinbefore granted to the said grantee, which hereby agrees to bury all pipe lines to a sufficient depth so as not to interfere with cultivation of soil, and to pay damages which may arise to growing crops or fences from the construction, maintenance and operation of said pipe, telegraph and telephone lines."

The pipe line company pleaded that the contract contemplated, as was well known to Menke, the following separate operations in the laying of the pipe line, in each of which operations it was necessary to use heavy machinery and to breach the fence at the points of entrance and exit: (1) Digging trenches, (2) hauling pipe on the premises, (3) laying pipe, (4) welding pipe, (5) covering trenches. The evidence showed that in the course of these several operations the fence was breached a number of times and Menke's cattle escaped. Menke or his employees put up the fence after each breach as soon as it was discovered, but not in time to prevent the escape of cattle. One of the witnesses described the manner in which the fence was breached as follows: "The wire was pulled loose for about 100 or 150 yards. The wire was pulled loose from the posts and lying flat on the ground." (A well-known method in certain portions of the state). It is not questioned that the evidence was sufficient to support the jury finding that the cattle died from Texas fever contracted as the result of escape of some of the cattle through breaches in the fence into infected territory.

In support of the first proposition above, appellant cites Houston & E. T. Ry. Co. v. Adams, 58 Tex. 476; Mexican Nat. Const. Co. v. Meddlegge, 75 Tex. 634, 13 S. W. 257; Gulf Co. v. Watson (Tex. Civ. App.) 8 S.W. (2d) 957; Central P.. & L. Co. v. Johnston (Tex. Civ. App.) 24 S.W.(2d) 762; 1 C. J. 964–966. The gist of appellant's contention, which these authorities are cited to support, is that under the easement agreement appellant obtained the legal right to breach the fences when and wherever necessary or proper in the construction, maintenance, and repair of the pipe line, obligating itself only to pay compensation for pecuniary damages to the fences; and that there could be no recovery so long as there was no negligence on its part and no exceeding of the authority thus granted in the easement agreement. In the abstract the general principle thus announced is correct, assuming appellant has correctly construed the contract.

In a supplemeneal brief appellant cites Wallace v. Ins. Co., 4 La. 289; note to Platt v. Ins. Co., 26 L. R. A. 853; 26 C. J. p. 448, § 601. The proposition announced in these citations is to the effect that in insurance contracts, in the absence of an express stipulation to that effect, the insurer must pay the loss in money, and has not the right to rebuild or repair—a proposition generally recognized.

We are unable to concur in appellant's construction of the easement contract. In Ry. v. Adams, above, the grant was to a railroad for a right of way through lands for the purpose of constructing and operating a railroad. Such a grant constitutes "a perpetual easement which for most purposes is as full and complete a dominion over the land itself as that of an owner in fee." Texas & P. Ry. Co. v. Ward County Irr. Dist., 112 Tex. 593, 251 S. W. 212, 217. So far at least as surface rights are concerned, the grantor is as effectually excluded from the right of way as if he had parted with the fee. The easement here granted is much more restricted, the instrument expressly providing that "the said grantor is to fully use and enjoy the said premises, except for the purposes herein granted to said grantee." It is a cardinal rule in the construction of contracts that they be given a practical interpretation with a view to effect the intention of the parties as gleaned from the language of the instrument, the subject-matter dealt with, the surrounding circumstances,

and the objects sought to be accomplished. Stevens v. Ry. (Tex. Com. App.) 212 S. W. 639. The general object here in view was a grant of privilege to appellant to construct, maintain, and repair its pipe line and other appurtenances, and at the same time to preserve to appellee the full use and enjoyment of his property, save only as abridged by the purposes of the grant. It would not be reasonable, we think, to impose upon appellee the constant duty to keep watch over the entire fence line of his inclosure, and be prepared at all times to guard apertures in the fence as soon as made and during construction, maintenance, and repair work on the pipe line. The reasonable thing to expect under such circumstances would be that when the fence was breached the appellant would replace the wires on the posts so as to preserve the inclosure. The situation is closely analogous to that of closing gates that are used for ingress and egress by the owner of a right of passage over another's lands. In such case the general rule is that "it is the duty of the owner of the way to close and fasten such gates after he has passed through, and on his failure to do so he may be enjoined from using the way, and will be liable for any damages resulting thereby to the servient estate." 19 C. J. p. 981, § 229. See, also, Damron v. Justice, 162 Ky. 101, 172 S. W. 120, and cases there cited.

■ The fact that there was an express agreement on appellant's part "to pay damages which may arise to * * * fences" does not, we think, militate against this construction. There might be damages to the fences independently of preserving the inclosure, just as there might be damages to gates, independently of closing and fastening them. The contract here provided for a joint use of the property. The express reservation of full use and enjoyment by appellant, except for the purposes of the grant, could not be effected by leaving unguarded breaches in the fences, the very purpose of which was to confine appellee's cattle. There is not such a marked difference, we think, between refastening the wires upon an ordinary barbed wire pasture fence and the closing and fastening of gates, as to require a different rule as to the former.

The above rule in insurance cases we think inapplicable here. There, the whole purpose of the contract is indemnity for a loss created by an independent agency. The owner, in such case, might not choose to rebuild or repair along the lines of the destroyed or damaged structure. Here the injury is inflicted by one of the parties, who is under both an express and implied obligation to cause as little damage and inconvenience to the owner as practicable, consistent with a proper exercise of the granted rights.

■ The issue of contributory negligence (an affirmative defense) was submitted to the jury, without objection to the manner and form of its submission; and was found in favor of appellee. The only question in that regard here presented is whether that defense was conclusively established as a matter of law.

The substance of the evidence on this issue, briefly stated, was: On one occasion appellee's son found two head of cattle in a lane a short distance from a breach in the fence made by appellant's employees. These cattle he drove back into the pasture and about six weeks later found that they were infected with Texas fever. It did not appear that this lane was infected territory or that such fact was known to or suspected by appellee. On another occasion this son, being advised that there was a steer in another man's pasture, drove it home and at once dipped it. A third incident relied upon was that appellee allowed certain horses and mules that were being used by appellant in constructing its pipe line to be kept in a lot near one of appellee's tenant houses. The evidence did not show that this live stock was infected or that such fact was known to or suspected by appellee. Clearly, we think, this evidence did not conclusively establish contributory negligence on appellee's part. At most, it merely raised the issue as one of fact.

The trial court's judgment is affirmed.

Affirmed.