**OREGON SHORT LINE R. CO. v. CLARK COUNTY HIGHWAY DIST. et al.**

(District Court, D. Idaho, S. D. January 3, 1927.)

No. 617.

1. **Constitutional law ⬤⟿278(2)—Highways ⬤⟿90—Idaho statute for creation of highway districts held unconstitutional as depriving owner of property without due process of law (Comp. St. Idaho 1919, §§ 1491–1495, 1506, 1507).**

Comp. St. Idaho 1919, §§ 1491–1495, 1506, 1507, provide for the organization of highway districts on petition of not less than 50 holders of title to lands in a contiguous tract of at least 20,000 acres or $1,000,000 in value, or of not less than 20 per cent. of the adult residents in the territory, defining the boundaries of a proposed district and giving it a name. An election within such boundaries must be called, and if a majority of the votes cast by the qualified electors is favorable the district must be declared duly organized, and has power to issue bonds payable by ad valorem taxation. A district so organized voted to issue $100,000 in bonds for highway construction. The road of complainant railroad company constituted substantially one-half the taxable property in the district. *Held*, that it was entitled to an injunction restraining issuance of the bonds, on the ground that as to it the statute was invalid, as in violation of the due process clause of the Constitution, in that the district was not created nor the tax levied by the Legislature, nor by any responsible tribunal authorized to hear and determine the question of benefits.

In Equity. Suit by the Oregon Short Line Railroad Company against the Clark County Highway District and the Commissioners of such district. On motion to dismiss bill. Denied, and decree for complainant.

George H. Smith, of Salt Lake City, Utah, and H. B. Thompson and J. H. McEvers, both of Pocatello, Idaho, for complainant.

R. W. Katerndahl, of Dubois, Idaho, for defendant Clark County Highway Dist.

A. H. Conner, Atty. Gen., and S. E. Blaine and John W. Cramer, Asst. Attys. Gen., for State of Idaho.

Before RUDKIN, Circuit Judge, and DIETRICH and WEBSTER, District Judges.

DIETRICH, District Judge. The defendant is a highway district of Idaho, organized pursuant to the provisions of chapter 66, and particularly sections 1491, 1492, 1493, 1494, 1495, 1506, and 1507, of the Compiled Statutes (1919) of that state. Through it runs one of the main lines of the plaintiff Oregon Short Line Railroad Company, 37.5 miles in length. The district proposes to issue bonds in the amount of $100,000 for the construction and improvement of highways within its boundaries. Under the law funds for the payment of the bonds are to be realized from ad valorem taxes. The assessed value of plaintiff's property in the district is $2,066,400, and of all other property $6,205,040.

Plaintiff prays for an injunction against the proposed bond issue. Its position is that the work contemplated is in the nature of a local improvement, the burden of which should be borne in proportion to benefits; that it will receive no direct benefit, and the indirect benefit, if any, will be remote and unsubstantial; that there has been no legislative determination of the benefits, either by the Legislature or by any political subdivision clothed with legislative power; and that it is essential to due process of law, as guaranteed by the Fourteenth Amendment to the Constitution of the United States, that there be such legislative determination, or that all property owners in the district be given notice and an opportunity to be heard before a competent tribunal, upon the question of benefits; but that no such notice or opportunity has been given, and the law makes no provision therefor.

These contentions the complaint exhibits in appropriate detail, and the defendant challenges its sufficiency by a motion to dismiss. Inasmuch as either expressly or impliedly the plaintiff concedes that, both in the organization of the district and in the

proceedings which have been taken for the issuance of the bonds, there has been strict compliance with the provisions of the highway district act, the underlying, and indeed the only, question submitted is of the validity of the act; and upon that question the plaintiff confidently asserts the recent decision of the Supreme Court of the United States in what is sometimes referred to as the Archer County Case (Browning v. Hooper, 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. 330) is controlling in its favor; whereas the defendant contends that the Texas act there involved is substantially distinguishable from the Idaho law, and that therefore the decision is not conclusive.

Turning to the Idaho law, we find that proceedings for the organization of a district are initiated by 50 or more holders of title, or evidence of title, to lands in a "contiguous" tract aggregating at least 20,000 acres in area, or $1,000,000 in value, or by 20 per cent. of the adult residents in such territory. Such property owners or residents sign and file with the clerk of the board of county commissioners a petition defining the boundaries of the proposed district and giving it a name; and thereupon it becomes the duty of the clerk to give the prescribed notice of an election, at which residents in the proposed district, having the qualifications of electors at a political election, may vote, the ballot being either "Yes" or "No." It is the duty of the county commissioners to establish a reasonable number of voting precincts, and after the election to convass the election returns, and if they find that a majority of the votes so cast are in favor of the organization it becomes their duty to declare the territory described in the petition duly organized as a highway district. It is further provided that thereafter the validity of the proceedings shall not be impaired by any defect in the petition, or in the number or qualifications of its signers. The legal status of such a district is defined in Shoshone Highway Dist. v. Anderson, 22 Idaho, 109, 125 P. 219, and Kimama Highway Dist. v. Oregon Short Line R. Co. (C. C. A.) 298 F. 431.

It will thus be seen that, in the organization or creation of the district which is to exercise taxing powers of great latitude, neither the board of county commissioners, nor its clerk, nor any other board or officer, has any discretion whatsoever; their duties being purely ministerial. Subject only to the condition that the lands must be "contiguous," and must aggregate an area of 20,000 acres or a value of $1,000,000, the selection of

the territory and the determination of the shape and extent of the district are committed entirely to the will of a small number of property holders, or a small percentage of nontaxpaying residents. Neither the commissioners nor the voters can change the proposed boundaries. The taxable status of the property embraced in the district is thus unalterably and irrevocably established, without the exercise, direct or indirect, of legislative judgment or discretion, and without an opportunity to nonconsenting property owners to be heard. True, with the organization of the district it becomes vested with wide and almost exclusive jurisdiction in respect to highways within its borders; and its governing board, consisting of three commissioners, elected every four years, is clothed with large powers and a measure of discretion. But, it is to be noted, that discretion does not extend to the apportionment of taxes for the upkeep of highways, or for the payment of the interest or principal of bonds issued for their construction. These officers can change neither the form nor the boundaries of the district, nor can they change the requirement that taxes shall be assessed ratably upon the basis of value; hence it is essentially true to say that the relative burden of all taxes is pre-determined by the few original petitioners who may or may not be taxpayers at all, or, at best, by a majority of those voters at the organization election, who may or may not be taxpayers.

If the Legislature had established some reasonable standard for a district, some rules for the guidance of petitioners and voters, some reasonable limitations upon self-interest and caprice, or had clothed a disinterested and responsible board with legislative power and responsibility within a reasonable range, different considerations would be presented. Under the terms of the law as it stands, the most flagrant injustice is easily possible. In the main, the state is sparsely settled, and not uncommonly the small communities are widely scattered, with intervening stretches of territory having but few inhabitants and but a small percentage of land in private ownership. Under such conditions the requirement that a district have an area of at least 20,000 acres furnishes no substantial safeguard to the few owners of property within such area. Strictly within the letter of the law, residents having no taxable property or only a negligible amount may set up and operate a district which will all but confiscate private holdings therein. Or, resorting to the alternative requirement of a minimum value, instead of a minimum

area, it would be entirely possible, where a railroad line runs through a stretch of public land, for the residents at a few small railroad stations to organize a district and cast upon the railroad property substantially the entire cost of constructing and maintaining an expensive system of highways of little local need or value. Accordingly the defendant district might have been organized with a territory 37 miles in length and 1 mile wide, so as to embrace little more than the railroad and the three or four small railroad towns along the line thereof. The railroad alone would ·furnish the requisite property value. That such possibilities are not fanciful is shown by the actual instances involved in Oregon Short Line R. Co. v. Kimama Highway Dist. (D. C.) 287 F. 734; s. c. (C. C. A.) 298 F. 431, and Oregon Short Line R. Co. v. Yale Highway Dist. (C. C. A.) 8 F.(2d) 676.

Upon consideration of the Texas law, we find that, while in some respects it differs from that of Idaho, we are unable to conclude that the differentiating provisions are of such character as materially to affect the application of the principles thought to be controlling in the Archer County Case. Under that law, upon the petition of 50 resident property taxpaying voters of any defined district, it becomes the duty of the commissioners' court to order an election in the district as described in the petition, to determine whether its bonds shall be issued for road purposes, and whether a tax shall be levied upon the property of the district for their payment. For the purposes of the act, any district accepting its provisions by the vote at such election is thereby created a body corporate, which may sue and be sued. In the Archer County Case the court said:

"The Legislature did not create the road district, levy the tax, or fix the amount to be raised. Under the act, road districts are not required to correspond with or to include any political subdivision. * * * There is nothing in the law to guide or to limit the action of the signers of the petition in selecting property to be assessed. Subject to the vote of a district of their own choice, the petitioners' designation is absolute. The commissioners' court has no power to modify or deny; it is bound to grant the petition. * * * And when the required vote is given, the court, once for all, must make a levy on the taxable property of the district sufficient to pay the entire debt as it matures. * * * And plainly the authority granted (article 627) to issue road bonds up to one-fourth the assessed valuation and to levy tax-

es ratably to pay them is not a legislative determination of the rate or amount of the tax imposed on appellants' property. The amount of the bonds to be issued and the property to be taxed are the elements which determine the burden. These were fixed by the petition and election. The Legislature may make assessments for local improvements ratably upon the basis of property valuation; * * * but, where the amount to be raised is determined and the property to be assessed is selected as in this case, the requirement that the burden shall be so spread is not a legislative assessment."

And finally: "Where a local improvement territory is selected, and the burden is spread by the Legislature or by a municipality to which the state has granted full legislative powers over the subject, the owners of property in the district have no constitutional right to be heard on the question of benefits. * * * But it is essential to due process of law that such owners be given notice and opportunity to be heard on that question, where, as here, the district was not created by the Legislature, and there has been no legislative determination that their property will be benefited by the local improvement. Appellants were denied all opportunity to be heard. No officer or tribunal was empowered by the law of the state to hear them, or to consider and determine whether the road improvements in question would benefit their lands. The act is repugnant to the due process clause of the Fourteenth Amendment."

As we construe this last paragraph of the opinion, it is decisive in support of plaintiff's contention here. Clearly the defendant district was not created by the Legislature, and there has been no legislative determination that plaintiff's property will be benefited by the proposed highway improvements. It was denied all opportunity to be heard, and no officer or tribunal is empowered by the law of the state to consider and determine whether such proposed improvements would benefit its property. It is not thought to be of controlling importance that under the Texas law the existence of the district terminates upon the completion of the improvement and the payment of the bonds; nor that both the creation of the district and the issuance of the bonds are effected by a single election instead of by two elections, as here. The result is the same, and the accomplishment is no more a legislative act in one case than in the other. Nor do we deem it highly material that, in the Kimama and Yale Highway District Cases,

supra, the validity of the Idaho law was assumed. Those cases antedated the Archer County decision, and in them apparently the question now presented was not raised.

While we have examined, we do not deem it necessary here to review, the many cases cited in the several briefs upon behalf of the defendant. In no one of them do we find warrant for withholding application of the rule of the Archer County decision.

Motion denied, and decree for plaintiff as prayed.

RUDKIN, Circuit Judge, and WEBSTER, District Judge, concur.