MOODY, Atty. Gen., et al. v. SAN SABA COUNTY WATER CONTROL AND IMPROVEMENT DIST. NO. I. (No. 7095.)*

Court of Civil Appeals of Texas. Austin.
March 23, 1927.

Rehearing Denied April 13, 1927.

I. Statutes ⬤==183—Section may be construed in more limited sense than literal interpretation imports, if section or act as whole shows such construction was intended.

In arriving at legislative intent, court is not confined to consideration of literal language of particular section or portion of section of statute, but if, taking section or act as whole, it appears that language in particular section was used in more limited sense than literal interpretation would import, it is proper to construe section in limited sense.

2. Waters and water courses ⬤==183½—Statute requiring bonds of water control and improvement district to be approved and registered before sale held mandatory (Laws 39th Leg. [1925] c. 25, § 34).

Laws 39th Leg. (1925) c. 25, § 34, providing for approval by Attorney General and registration of bonds other than preliminary bonds issued by water control and improvement district before same are sold, is mandatory.

3. Waters and water courses ⬤==183½—Preliminary bonds of water control and improvement district are not permitted to be approved and registered before sold (Laws 39th Leg. [1925] c. 25, § 34).

Under Laws 39th Leg. (1925) c. 25, § 34, requiring approval by Attorney General and registration of bonds other than preliminary bonds of water control and improvement district before sold, preliminary bonds to determine feasibility of organizing district are not permitted to be approved and registered.

4. Waters and water courses ⬤==183½—Proceeding to validate water control and improvement district bonds obviates necessity for approval by Attorney General but not registration (Laws 39th Leg. [1925] c. 25, §§ 34, 95–100).

Proceedings under Laws 39th Leg. (1925) c. 25, §§ 95–100, to validate water control and improvement district, and bonds issued thereby, are purely optional and when resorted to obviate necessity for or supersede approval of bonds of Attorney General under section 34, though registration of bonds is essential whether approved or validated.

5. Waters and water courses ⬤==183½—Provisions for proceeding to validate water control and improvement district bonds are inapplicable to preliminary bonds (Const. art. 16, § 59; Laws 39th Leg. [1925] c. 25, §§ 31, 32, 34, 95–100).

Under Const. art. 16, § 59, Laws 39th Leg. (1925) c. 25, §§ 31, 32, 34, authorizing creation of water control and improvement district and approval of bonds other than preliminary bonds by Attorney General, and sections 95–100, providing for proceedings to validate district and

bonds issued thereby, do not apply to preliminary bonds issued at option of district to determine feasibility of creating district, and district court is therefore without jurisdiction to entertain suit to validate preliminary bonds.

6. Waters and water courses ⬤==183½—Provision authorizing directors to exclude lands from water control and improvement district before bonds issue has no reference to preliminary bonds (Laws 39th Leg. [1925] c. 25, § 76).

Under Laws 39th Leg. (1925) c. 25, § 76, authorizing directors of water control and improvement district to exclude land from district in light of investigation made to determine feasibility of project, limited to time before bonds are issued, word "bonds" has no reference to preliminary bonds issued to defray expenses of investigation.

7. Waters and water courses ⬤==183½—Water control and improvement district is merely temporary until investigation determining feasibility is completed and bonds approved (Const. art. 16, § 59; Laws 39th Leg. [1925] c. 25, §§ 95–100, 31, 32, 34, 76).

Under Const. art. 16, § 59, and Laws 39th Leg. (1925) c. 25, §§ 95–100, 31, 32, 34, 76, water control and improvement district is merely temporary and preliminary until investigation to determine feasibility of project has been completed and construction plans and bonds approved, though if project is abandoned district continues for purpose of discharging indebtedness incurred.

8. Waters and water courses ⬤==183½—Provisions for validating bonds of water control and improvement district held to apply only to bonds issued for maintenance of plant (Laws 39th Leg. [1925] c. 25, §§ 95–100).

Laws 39th Leg. (1925) c. 25, §§ 95–100, providing for proceedings to validate water control and improvement district and bonds issued thereby, refers only to bonds which district is required to issue for erection and maintenance of plant for which district was organized, regardless of whether preliminary bonds have theretofore been issued, and validation proceeding is limited to determination of validity of such bonds.

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Suit by the San Saba County Water Control and Improvement District No. 1 against Dan Moody, Attorney General, in which certain property owners intervened. Judgment for plaintiff, and defendant and interveners appeal. Reversed, and cause dismissed.

Dan Moody, Atty. Gen., C. A. Wheeler, Asst. Atty. Gen., and Wallace & Taylor, of Dallas, for appellants.

N. C. Walker, of San Saba, for appellee.

McCLENDON, C. J. Suit by appellee, designated for convenience the district, brought under sections 95 to 100 of chapter 25, General Laws of the 39th Legislature (1925) for the validation of the district and of an issue of

preliminary bonds of $20,000. Certain property owners intervened and contested the validation. Trial to the court, and judgment for appellee validating the creation and organization of the district and the preliminary bonds. From this judgment the Attorney General and the interveners have appealed.

The act in question does not provide for appeal from the validating judgment; and if the holding by the Supreme Court of the United States in Treaga v. Modesto District, 164 U. S. 179, 17 S. Ct. 52, 41 L. Ed. 395, to the effect that the validation suit provided for is only a proceeding to secure evidence and is binding upon no one as res judicata, be followed, then it may be questioned whether the proceeding is a "civil case" within the meaning of R. S. 1925, arts. 1819 and 2249, from which an appeal will lie. Neither party has, however, raised this question, and since we have reached the conclusion that the proceeding should be dismissed on another ground, we express no opinion upon this question.

The district was organized under those provisions of the act authorizing organization of "water control and improvement districts organized under the provisions of section 59 of article 16 of the Constitution," and the various steps provided in the act were taken up to and including an election confirming the organization of the district and authorizing the issue of preliminary bonds not to exceed $20,000, as provided for in sections 31 and 32 of the act. At this juncture the suit was brought in the district court of Travis county to validate the organization of the district and the preliminary bond issue.

Appellants' second proposition is to the effect that the validation sections of the act do not apply to preliminary bonds, and that the district court was therefore without jurisdiction to entertain the suit. Appellants also raise a number of other important questions, among them the constitutionality of the entire act; but since we have concluded that their second proposition should be sustained, we pretermit discussion of the other questions presented.

The following sections of the act are involved in the issue decided:

Sections 31 and 32, which alone deal with preliminary bonds eo nomine, read:

"Sec. 31. The directors of the district shall have full authority to make investigations and plans necessary to the operation of the district and the construction of plants and improvements. They may employ engineers, attorneys, bond experts, and other agents and employees required to aid them in the performance of such duties. The district may issue bonds to be known and designated as preliminary bonds, for the purpose of creating a fund to pay the costs of organization of the district and of making surveys, investigations, attorneys' fees, engineering work, cost of issuance of bonds, and all other costs and expenses incident to the organization of the district and its operation in investigating and determining upon plans for its plant and improvements and the expense of issuing and selling bonds to provide for such permanent improvements.

"The directors shall make an estimate of such expenses and state in the notice of election the amount of same. Said proposition of the issuance of such bonds shall be submitted to an election and shall be adopted. Those voting at such election shall be qualified electors and property tax payers. Such preliminary bonds shall bear interest at a rate not to exceed six per cent. per annum and shall be due and payable not to exceed ten years from their date. While said bonds shall be known and designated on the records as preliminary bonds it shall not be necessary to so designate same on the bonds.

"Sec. 32. Said bond election may be held at the same time as the election held for the confirmation of the district, or at such time thereafter as the directors shall provide. When such bonds have been authorized by an election the directors may make an order for the issuance thereof in an amount not to exceed the amount stated in the notice of election. Said bonds may be made payable serially or upon an amortization plan at any time within ten years from their date. At the time such bonds are issued tax shall be levied sufficient to pay the interest thereon and provide for the payment of the principal thereof as same mature and to pay the cost of assessing and collecting such taxes."

Section 34 reads:

"Whenever a district shall issue bonds other than preliminary bonds, before same are sold a record showing all proceedings of the organization of the district and of the issuance of bonds shall be filed in the office of the Attorney General of the State and it shall be the duty of the Attorney General to examine same and give his opinion thereon. Said record may be so presented to the Attorney General before such bonds are printed and executed after the record providing for the issuance of same is completed. When such record is approved said bonds shall be issued or duly executed and shall be submitted to the Attorney General for approval. If he shall find that same have been issued in accordance with the provisions of law and that such bonds are valid, binding obligations upon the district he shall so officially certify and execute a certificate thereof which shall be filed in the office of the state comptroller and be recorded in a record kept for that purpose. Such bonds after being approved and registered shall be held in any suit or proceeding in which their validity may be questioned to be valid, binding obligations of such district, provided, however, that any party interested therein may file a suit thereon at any time prior to the registration of same by the state comptroller, but not thereafter. Said bonds shall not be so registered in the office of the state comptroller until twenty days after the date of the election authorizing the issuance thereof."

There are numerous subsequent sections of the act relating to bonds, but other than in the sections above quoted no express language is used to designate such bonds as "preliminary" or "other than preliminary."

Some of these sections, notably 78 and 79, manifestly do no apply to preliminary bonds; and it may be seriously questioned whether any of them so apply, with the possible exception of section 101. We quote, in this connection, section 76, to which we will advert later:

"Whenever a district shall have been organized and the directors shall find that land has been included within the boundaries of the district that should not have been included therein for the reason that same cannot be supplied with water from the plant and improvements to be constructed by the district, or for other good reason, and such facts are ascertained and determined before bonds are issued, the directors may make an order entering on their minutes excluding such lands from the district and give notice thereof to the owners of such lands by mail. Notice thereof shall also be given by publication of notice once a week for two consecutive weeks in a newspaper published in the county or counties in which such district is situated. The owners of any such land may file protest thereto at any time within thirty days after the publication of notice and in the event of such protest such lands shall not be excluded therefrom. In the event no protest thereto is filed, such order excluding such lands shall become and be effective thirty days after publication of notice thereof is complete, whereupon said order excluding such lands shall be filed for record in the office of the county clerk of the county in which such lands are located."

The validating sections read:

"Sec. 95. Whenever any district shall have issued bonds as herein provided and may desire to validate same by suit as hereinafter provided, such suit may be filed for the validation or the organization of such district and of such bonds and after the rendition of a final judgment therein said bonds shall be incontestable and no suit shall be brought in any court of this state contesting or enjoining the validity of the formation of any such district or any bonds issued thereby ordering the validity of contract with the United States or of authorization thereof by the district, except in the name of the state of Texas, by the Attorney General upon his own motion or upon the motion of any party affected thereby upon good cause shown. No such suit shall be filed or prosecuted by the Attorney General unless based upon allegations of fraud disclosed or found after the rendition of a final judgment in such validation suit. If such validation suit is filed it shall not be necessary to have said bonds approved by the Attorney General as herein otherwise provided.

"Sec. 96. Such validation suit shall be brought by the district in the district court in any county in which said district or any part thereof is located, or in any county of the judicial district in which such district is located, or in the district court of Travis county. Such suit shall be to determine the validity of the organization of such district and determine the validity of such bonds; or such district contracting with the United States shall, if requested by the Secretary of the Interior, bring such an action to determine the validity of such contract. Such suits shall be in the nature of a proceeding in rem and jurisdiction of all parties thereto and interested therein shall be had by publication of a general notice thereof once each week for at least two consecutive weeks prior to the term of court to which same is returnable. Said notice shall be published in some newspaper of general circulation in the county or counties in which such district is situated, and if no paper is published in such county or counties, then same shall be published in a newspaper of the nearest county thereto where a paper is published. Notice shall also be served upon the Attorney General of the State of Texas of the pendency of such suit in the same manner as civil suits. The Attorney General may waive service in such suits when furnished a full transcript of the proceedings had in the formation of such district; and in connection with the issuance of such bonds; in connection with the authorization of a contract with the United States and a copy of the contract.

"Sec. 97. It shall be the duty of the Attorney General to make an examination of all such proceedings and require such further evidence and make such further examination as may seem advisable to him. He shall then file an answer tendering the issue as whether such proceedings are valid and such bonds are legal and binding obligations upon such district, or as the case may be, as to whether such contract with the United States is legal and binding upon the districts. Any person interested therein may intervene in said cause or file answer therein. The issue thus made shall be tried and determined by the court and judgment be entered upon such finding. If such bonds shall have been approved by the Attorney General and have been registered before such suit is filed then the filing of such suit cancels prior registration. All suits brought under the provisions of this act shall have preference over all other actions in order that a speedy determination thereof may be had.

"Sec. 98. Upon the trial with the issues made in accordance with the preceding section of this act, if the judgment of the court shall be adverse to the district upon any issue, then such judgment may be by said district excepting and the error pointed out in such proceedings may be corrected, the judge in the manner directed by the court and when so corrected, the judgment of the court shall be rendered showing that such corrections have been made, and that the bonds issued thereunder, or the contract with the United States are binding obligations upon such district. And thereafter the judgment as finally made and entered shall be received as res adjudicata in all cases thereafter arising in connection with the collection of said bonds, or any interest due thereon, or of any taxes levied by the district to pay the charges thereon, or in connection with the collection of moneys required by a contract with the United States, and as to all matters pertaining to the organization and validity of said district or pertaining to the validity of such bonds, or of a contract with the United States.

"Sec. 99. After the making and entry of the judgment of the district court as herein provided the clerk of said court shall make a certified copy of such decree which shall be filed in the office of the state comptroller and be by him recorded in a book kept for that purpose. Said certified copy or a certified copy of said record

thereof, made and kept by the comptroller, shall be received in evidence in any suit thereafter arising which may affect the validity of the organization of such district, or the validity of such bonds, or of such contract with the United States, and shall be conclusive evidence of such validity.

"Sec. 100. Upon the presentation of said bonds together with certified copy of the decree of the district court, the comptroller shall register such bonds in a book kept in his office for that purpose, and shall attach to each of said bonds a certificate of the fact that the decree of the district court as required by this Act has been filed and recorded in his office. Said certificate shall be signed officially and the seal of his office attached thereto."

The contention of appellee that preliminary bonds are included in the validation sections is grounded in the main on the proposition that the language in the first sentence of section 95, reading, "Whenever any district shall have issued bonds as herein provided and may desire to validate same by suit as hereinafter provided," is all-inclusive, embracing every character of bond provided for in the act. It is urged that this construction is strengthened by section 101 of the act which alone deals with the sale of bonds and must needs apply to all character of bonds, and by the fact that it is very important to have the district and preliminary bonds validated, before such bonds are sold or the expense incident to organization and determination of the feasibility of the project for which the district is to be created is incurred.

[1] We concede the force of this argument. But in arriving at the legislative intent we are not of necessity confined to a consideration of the literal language of a particular section or portion of a section. If taking the section or act as a whole it fairly appears that the language under construction in the particular section was used in a more limited or restricted sense than its literal interpretation would import, it is proper to so construe it and thus give effect to the legislative intent.

While conceding that the question presented is not free from doubt, but on the contrary presents some difficulty in its solution, the following considerations impel us to the conclusion we have above announced.

The concluding sentence of section 95 reads:

"If such validation suit is filed it shall not be necessary to have said bonds approved by the Attorney General as herein otherwise provided."

This language would seem to imply that the bonds dealt with in the section are only such bonds as are required by the act to be approved by the Attorney General. Following out this construction, section 96 requires service on the Attorney General; section 97 provides that, "if such bonds shall have been approved by the Attorney General and have been registered before such suit is filed then the filing of such suit cancels prior registration"; and sections 99 and 100 require a certified copy of the validating judgment to be filed with and registration of the bonds by the Comptroller the same as in case of approval by the Attorney General under section 34. That section furnishes the only provision which the act contains for approval of bonds by the Attorney General, and that section expressly limits such approval to "bonds other than preliminary bonds." In the light of this limitation, the argument based on the importance of validation as applied to preliminary bonds loses its force. Every reason advanced for the validation of preliminary bonds applies with equal force to their approval by the Attorney General and registration by the Comptroller. Each of these provisions has in view the same purposes, which are thus enumerated in Belton v. Bank (Tex. Civ. App.) 273 S. W. 914, at page 921:

"The purpose of those articles was twofold. On the one hand it was to give protection to the taxpayers against the imposition of burdens upon their property which had not been legally imposed, by having their rights investigated and passed upon by the highest legal officer of the state before the bonds passed into the hands of those against whom otherwise valid defenses might not avail. On the other hand, it was to protect purchasers and give to this character of municipal securities a stability which would be 'in aid of their negotiability' (Lasater v. Lopez, 110 Tex. 186, 217 S. W. 373, 376) by enhancing their value and affording for them a sure and ready market. The credit of the municipalities of the state would thereby be enhanced, and their bonded securities more easily floated."

[2-5] The provision for approval and registration is mandatory and is expressly limited to bonds other than preliminary. The latter are not permitted to be approved and registered. The validating proceeding is purely optional, and when resorted to expressly obviates the necessity for and supersedes approval. Registration is essential under either proceeding. We can see no valid argument that could be urged in support of authorizing validation (which is purely optional with the district) of preliminary bonds that would not apply with equal or greater force to the mandatory requirement for approval and registration, which latter is expressly denied. By applying the validation sections to preliminary bonds the protection afforded to purchasers and taxpayers is left to the will of the district directors. A construction of the statute which in case of preliminary bonds would permit validating while denying approval ought we think to be clearly expressed.

The act affords ample reasons for the requirement of approval and registration in the case of bonds other than preliminary, and for withholding such approval and registration in case of preliminary bonds. And these rea-

sons apply with equal force to the validating proceeding. The purpose for which these districts are formed is the construction and operation of plants with a view of irrigation and water control. The ultimate object is to increase the productiveness of the lands in the district, thereby enhancing their value. In order to bring about the desired results, it is manifest that it is necessary to have, and the act provides for, careful scientific investigation to determine feasibility of the project from the standpoint of cost and otherwise, the character of plant to be erected, the irrigability of the lands in the proposed district, and other matters incident to engaging in a project which necessarily entails large outlay of money and imposes heavy burdens upon the taxpayers. The amount required for this preliminary investigation is small in comparison to that necessary for the contemplated plant. Short-time bonds to cover this preliminary expense are provided for in sections 31 and 32. But it is to be noted that their issuance is optional. The directors are given power to incur the expense without issuing bonds if they find it feasible and desirable. Until this investigation is made the district itself is in effect only tentative or preliminary. The feasibility of the project for which the district is proposed cannot intelligently be determined until the survey and other matters incident to proper investigation are completed and a full report made. And before the district can erect a plant or function other than as purely preliminary, approval of the plans and authorization of construction bonds must be had of the electorate.

[6] Of equal importance .to the general feasibility of the project is a proper delineation of the district's permanent boundaries. Just what lands should be included in the district and what excluded therefrom cannot be determined in many cases, until the investigation provided for is completed. Until this is done the boundaries of the district are necessarily tentative and preliminary for all practical purposes. This fact is recognized in section 76 of the act above quoted. It is to be observed that the authority therein given the directors to exclude lands therefrom "for the reason that same cannot be supplied with water from the plant and improvements to be constructed by the district, or for other good reason," is limited to the time "before bonds are issued." Here the word "bonds," although not modified 'or limited by express language, manifestly has no reference to preliminary bonds. If it were given the broad meaning of "preliminary and other than preliminary," as contended for in relation to section 95, the power conferred in the section would be of practically no value. Clearly it was intended by this section to confer authority on the directors to exclude land from the district which, in the light of the investigation made, ought, for good reason, to be excluded, an-

293 S.W.—54

intention which should not fail merely because preliminary bonds had been issued.

[7] In holding the district merely temporary and preliminary until construction plans and bonds are approved, we do not mean to intimate that up to that time the district is not a body politic. It is; and if the project is abandoned, the district continues for the purpose of discharging the indebtedness so far incurred. But as a water control and irrigation district it is only in a formative state, and is merely tentative and preliminary, both as to its boundaries and as to its permanent creation and functioning.

A marked difference in the organization, boundaries, and debt-creating powers of the district is thus shown to exist between this preliminary status and the status after construction plans and bonds are voted.

Section 34 shows an express purpose of the Legislature not to require or permit bonds issued under this preliminary status to be submitted to the Attorney General for approval. The underlying reason for this limitation is, we think, the fact that the district is merely tentative and preliminary in fact, and the legal department of the state should not be called upon to determine the validity of the district or of its obligations until it has passed this preliminary stage, and its boundaries are definitely and permanently fixed. The record upon which the Attorney General acts under section 34 is required to show "all proceedings of the organization of the district and of the issuance of bonds"; thus clearly indicating that the Attorney General is required to pass upon the legality and regularity of every step in the organization of the district at the time "bonds other than preliminary" are submitted to him for approval. This is done once and for all time, since, when "bonds other than preliminary" are once issued, the district is permanently fixed as to boundaries, and its main indebtedness is created.

[8] If we read sections 95 to 100, inclusive, in the light of this express legislative purpose, the language we think becomes plain. "Whenever any district shall have issued bonds as herein provided" means the bonds they are required to issue to erect the plant for the erection and maintenance of which the district was organized, whether or not preliminary bonds have theretofore been issued. The purpose of the suit is "to determine the validity of the organization of such district and determine the validity of such bonds." The validation suit renders approval by the Attorney General unnecessary, and cancels such approval if already made. The Attorney General is served with notice of the suit and is charged with the same duty imposed by section 34. When judgment validating the district and the bonds is rendered, a certified copy takes the place of the Attorney General's approval and the bonds are regis-

tered by the Comptroller in like manner as provided in section 34.

This construction of section 95 does no violence to the language of that section. The words "bonds as herein provided" are given the same meaning that the same or similar words are manifestly used in in other portions of the act. The validating sections with reference to the Attorney General's approval become plain as written, without the necessity of resort to interpolation or other devices of construction. And all the provisions of the validating sections are harmonized and are brought into harmony with section 34 and the general purposes of the act.

The trial court's judgment is reversed and the cause dismissed.