**SAN SABA COUNTY WATER CONTROL & IMPROVEMENT DIST. No. 1 et al. v. SUTTON et al.   (No. 7233.) \***

Court of Civil Appeals of Texas. Austin.
March 28, 1928.

Rehearing Denied June 20, 1928.

1. **Constitutional law** ⚖278(2), 290(3)—**Waters and water courses** ⚖216—**Water district statute held void under due process clauses for failing to provide adequate hearing to landowners respecting boundaries and benefits; "trial de novo" (Acts 39th Leg. [1925] c. 25, §§ 18, 19, 76; Const. U. S. Amend. 14, § 1; Const. Tex. art. 1, § 19).**

Acts 39th Leg. (1925) c. 25, providing for water control and improvement districts, and, in section 19, that, if it shall appear on hearing to commissioner's court that organization of district "is feasible and practicable, that it would be a benefit to the land to be included therein or be a public benefit or utility" court shall grant petition, with right, under section 18, to appeal to district court and to trial de novo, *held* void under due process clauses of federal and state Constitutions (Const. U. S. Amend. 14, § 1; Const. Tex. art. 1, § 19) in not providing for adequate hearing to landowners with reference to benefits and boundaries, notwithstanding section 76, since commissioner's court has no ju-

risdiction to refuse petition because of want of benefits to landowners, if it finds district would be a public benefit; "trial de novo" importing new trial of same scope as trial in tribunal from which appeal is taken.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Trial de Novo.]

2. **Constitutional law** ⚖193—**Waters and water courses** ⚖216—**Failure of water district statute to provide for hearing on boundaries and benefits held not cured by amendment (Acts 39th Leg. [1925] c. 25, § 76; Const. Tex. art. 1, § 19; Const. U. S. Amend. 14, § 1; Acts 40th Leg. [1927] 1st Called Sess. c. 107).**

Failure to provide for hearing on question of benefits or boundaries of water control and improvement district in Acts 39th Leg. (1925) c. 25, § 76, providing method for final establishment of boundaries and elimination therefrom of lands not benefited, to comply with due process requirements and state and federal Constitutions (Const. Tex. art. 1, § 19; Const. U. S. Amend. 14, § 1), *held* not cured by Acts 40th Leg. (1927) 1st Called Sess. c. 107, amending said section 76 and adding section 76a; general scheme of amended section 76 being same as original, and section 76a being limited in scope to cities, towns, villages, and municipal corporations in district and not applying to landowners generally.

3. **Estoppel** ⚖81—**Citation in suit to enjoin tax collection by water district having been withheld at his request, defendant held precluded from asserting suit was not pending (Acts 39th Leg. [1925] c. 25; Acts 40th Leg. [1927] 1st Called Sess. c. 107, adding § 147a to Acts 39th Leg.).**

Where suit to enjoin collection of taxes or other official acts with reference to water control and improvement district organized under Acts 39th Leg. (1925) c. 25, was filed more than 30 days before effective date of Acts 40th Leg. (1927) 1st Called Sess. c. 107, adding § 147a to Acts 39th Leg., validating all such districts not then being contested in courts, but no citation was issued because of request by defendant's counsel and agreement that answer would be voluntarily filed to next term of court, defendant was precluded from asserting for first time on motion for new trial that suit was not in fact pending when curative act became effective because citation had not been issued.

On Motion for Rehearing.

4. **Constitutional law** ⚖278(2), 290(3)—**Waters and water courses** ⚖226, 231—**Water district held "local improvement district," and landowners entitled to hearing respecting benefits and boundaries under due process clauses (Acts 39th Leg. [1925] c. 25; Const. Tex. art. 1, § 19; Const. U. S. Amend. 14, § 1).**

Water control and improvement district organized under Acts 39th Leg. (1925) c. 25, is a "local improvement district," and landowners within boundaries thereof are entitled to hearing on question of benefits and boundaries under due process provisions of state and federal

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted.

Constitutions (Const. Tex. art. 1, § 19; Const. U. S. Amend. 14, § 1); commissioner's court not being such a governmental body as is authorized to create district without giving landowners opportunity to be heard.

[Ed. Note.--For other definitions, see Words and Phrases, First and Second Series, Local Improvement.]

Appeal from District Court, San Saba County; J. H. McLean, Judge.

Suit by I. C. Sutton and others against the San Saba County Water Control and Improvement District No. 1 and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

N. C. Walker, of San Saba, for appellants.
Wallace & Taylor, of Dallas, and J. H. Baker, of San Saba, for appellees.

McCLENDON, C. J. Suit by Sutton and a number of other property owners and taxpayers in the district against San Saba county water control and improvement district No. 1 and its directors and other officers, to enjoin the defendants from collecting taxes or performing other official act with reference to the district. Trial to the court without a jury, and judgment granting the relief prayed for. Defendants have appealed.

The district is wholly within San Saba county, and was organized under chapter 25 of the General Laws of the Regular Session of the Thirty-Ninth Legislature (1925); and the controlling question in the case is whether the act in question was void under the due process of law clauses of the federal and state Constitutions in not providing for an adequate hearing to landowners in the district with reference to benefits and boundaries. The trial court held the act void in this regard.

Briefly the scheme of organization provided in the act follows: A petition for the formation of the district, signed by designated number of landowners, delineating the boundaries of the district and giving the general nature of the project, its feasibility, utility, and estimated cost, is filed with the county clerk, and recorded in a book kept for that purpose. Notice of hearing the petition is posted and published 15 days prior to the hearing. The county commissioners' court has exclusive jurisdiction "to hear, consider and determine" the petition and its orders therein are final, "provided that if the court shall grant or refuse such petition any party thereto may file an appeal therefrom to the district court by filing with the clerk of the commissioners' court notice thereof within ten days after the making of a final order. * * * Said cause shall be tried as other civil cases in the district court, the trial being de novo except that it shall not be necessary to file any other or additional pleadings therein. * * * The final judgment on appeal

shall be certified by the clerk of said court, to the commissioners' court for further action as ordered therein."

Section 19 reads:

"If it shall appear on hearing to the commissioners' court that the organization of a district as prayed for is feasible and practicable, that it would be a benefit to the land to be included therein, or be a public benefit, or utility, the commissioners' court shall so find and grant the petition. If the court should find that such proposed district is not feasible or practicable, would not be a public benefit or utility, or is not needed, the court shall refuse to grant the petition."

When a petition is granted, the commissioners' court appoints five directors of the district to serve until their successors are elected or appointed in accordance with law. The directors are required before incurring any indebtedness other than for operation and holding the election, and in any event within 30 days of their first meeting, to call an election for confirmation of the district, at which only qualified resident property taxpaying voters are allowed to vote, and a majority of the votes cast is necessary for such confirmation. At this election, or at a subsequent one called for that purpose, preliminary bonds may be voted.

Section 76 of the act reads:

"Whenever a district shall have been organized and the directors shall find that land has been included within the boundaries of the district that should not have been included therein for the reason that same cannot be supplied with water from the plant and improvements to be constructed by the district, or for other good reason, and such facts are ascertained and determined before bonds are issued, the directors may make an order entering on their minutes excluding such lands from the district and give notice thereof to the owners of such lands by mail. Notice thereof shall also be given by publication of notice once a week for two consecutive weeks in a newspaper published in the county or counties in which such district is situated. The owners of any such land may file protest thereto at any time within thirty days after the publication of notice and in the event of such protest such lands shall not be excluded therefrom. In the event no protest thereto is filed, such order excluding such lands shall become and be effective thirty days after publication of notice thereof is complete, whereupon said order excluding such lands shall be filed for record in the office of the county clerk of the county in which such lands are located."

The organization of the district had proceeded to the point that it had been confirmed, directors elected and a preliminary bond issue of $20,000 authorized. Suit was then brought by the district for its validation under sections 95 to 99, inclusive, of the act. Upon appeal from a judgment validating the district, that suit was dismissed by this court upon the holding that the validating sections did not apply to preliminary

bonds. Writ of error to review this holding was refused by the Supreme Court. Moody v. San Saba County Water Control and Improvement District No. 1 (Tex. Civ. App.) 293 S. W. 845. Thereafter, and before any further steps had been taken in the organization or functioning of the district, this suit was brought with the stated result.

[1] While the question involved presents no little difficulty, we have reached the conclusion that the above-quoted provisions of the act, which alone attempt to provide for any hearing, are inadequate to the protection to which property owners are entitled under the due process of law constitutional provisions. We have not found any judicially construed act couched in language substantially the same as that employed in the act at bar, but we believe the principles announced in the Archer County Case (Browning v. Hooper, 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. 330) and State v. Ball, 116 Tex. 527, 296 S. W. 1085, when applied to the provisions of the act with reference to hearing, bring it within the condemnation of the equal protection of the law constitutional provisions. It cannot be questioned that the districts provided for in the act are within the general classification of those termed "local improvement districts." See T. & P. Ry. Co. v. Ward Co. Irrigation District, 112 Tex. 593, 251 S. W. 212. The Archer County and Ball Cases, following previous decisions by the Supreme Court of the United States, clearly enunciate the doctrine that, in the creation of such districts, the landowners are entitled to a hearing before some tribunal designated or created for that purpose, upon the question both of benefits and of boundaries.

In our discussion we may assume the correctness of the recent holding by the Supreme Court of Idaho (Stark v. McLaughlin, 261 P. 244) that it is not essential to due process of law that the power to fix the boundaries of the district be delegated to any tribunal, but that, where an adequate hearing on benefits and boundaries is afforded either in an original proceeding or on appeal, with the duty imposed upon such hearing tribunal to deny the petition upon appropriate findings upon those issues, the constitutional guaranties are met. The Idaho act gave the right of appeal to the district court from the order granting the petition, "by any person aggrieved thereby, or by a taxpayer who deems such act, order, or proceeding illegal or prejudicial to the public interests." It may be noted in this connection that the United States District Court for the Southern District of Idaho (a Circuit Judge and two District Judges sitting) held the same act unconstitutional, following the holding in the Archer County Case. Oregon S. L. R. Co. v. Clark County Highway Dist., 17 F.(2d) 125.

It is contended that sections 18 and 19, on the one hand, and/or section 76, on the

8 S.W.(2d)—21

other, afford ample hearing to meet the constitutional objections urged. The boundaries of the district as in the Archer County and Ball Cases are fixed by the petitions. There is no discretion in the commissioners' court under section 19 to change the boundaries in any respect. The commissioners' court is therein required either to grant or refuse the petition, and the matters to be inquired into upon the hearing by the commissioners' court are specifically stated as follows: That the district "is feasible and practicable, that it would be a benefit to the land to be included therein, or be a public benefit, or utility." If these issues are determined in the affirmative the commissioners' court is required to grant the petition. It is urged that the language "that it would be a benefit to the land to be included therein" requires a hearing upon benefits. This would be true but for the fact that benefit to the land on the one hand and a public benefit or utility on the other are placed in the alternative, and the commissioners' court is required to grant the petition upon finding the existence of either. There is no discretion in the commissioners' court to refuse the petition upon a finding that the land or some of it embraced in the district would be in no way benefited by its creation, if the commissioners' court should find, independently of the question of benefits to the land, that the creation of the district would be a public benefit or utility. This is accentuated by the last sentence of section 19, which requires the commissioners' court to refuse the petition if it should find that the proposed district "is not feasible or practicable, would not be a public benefit or utility, or is not needed." In this sentence the question of benefits to the land is not even mentioned, and it is quite apparent that, although power is vested in the commissioners' court to inquire into benefits, it has no jurisdiction to decline the petition because of want of benefits, provided it finds that the district would be a public benefit or utility.

Section 18, which provides for appeal to the district court, is no broader in its scope than section 19, providing for hearing before the commissioners' court. Waiving the question whether any one but a signer of the petition could appeal from the commissioners' court order under the language, "any party thereto may file an appeal therefrom," and assuming that the right of appeal is given to any party who has appeared at the hearing before the commissioners' court; the only provisions of section 18 relating to the scope of the appeal are that the trial shall be as in other civil cases and de novo, except that no additional pleadings need be filed. Clearly this section merely provides for an appeal from the commissioners' court to the district court, and a trial under general rules of civil practice except as to additional pleadings, upon the

several matters or issues, jurisdiction as to which is conferred by section 19 upon the commissioners' court. A trial de novo necessarily imports a new trial of the same scope as the trial authorized in the tribunal from which the appeal is taken. In the absence of any expression in the act evidencing an intention to broaden the scope of the trial in the district court beyond that authorized in the commissioners' court, it must be presumed that the scope of the hearing is the same in both tribunals; and, the commissioners' court being vested only with authority to grant or deny the petition upon its affirmative or negative findings upon specified issues, the district court upon appeal is necessarily limited in its jurisdiction to granting or refusing the petition upon the positive or negative findings upon the same issues.

It seems manifest to us that there was no intention in the act to grant an original hearing either upon benefits or boundaries. As pointed out in Moody v. Improvement District above, the general scheme of the act was, first, to form what might be termed a preliminary or tentative district, with provisions for a subsequent determination of boundaries after a careful scientific investigation of the feasibility of the project and its effect upon the lands in the district. To quote from the opinion in that case:

"The ultimate object is to increase the productiveness of the lands in the district, thereby enhancing their value. In order to bring about the desired results, it is manifest that it is necessary to have, and the act provides for, careful scientific investigation to determine feasibility of the project from the standpoint of cost and otherwise, the character of plant to be erected, the irrigability of the lands in the proposed district, and other matters incident to engaging in a project which necessarily entails large outlay of money and imposes heavy burdens upon the taxpayers. The amount required for this preliminary investigation is small in comparison to that necessary for the contemplated plant. * * * The feasibility of the project for which the district is proposed cannot intelligently be determined until the survey and other matters incident to proper investigation are completed and a full report made. And before the district can erect a plant or function other than as purely preliminary, approval of the plans and authorization of construction, bonds must be had of the electorate.

"Of equal importance to the general feasibility of the project is a proper delineation of the district's permanent boundaries. Just what lands should be included in the district and what excluded therefrom cannot be determined in many cases, until the investigation provided for is completed. Until this is done the boundaries of the district are necessarily tentative and preliminary for all practical purposes. This fact is recognized in section 76 of the act above quoted. * * * Clearly it was intended by this section to confer authority on the directors to exclude land from the district which, in the light of the investigation made, ought, for good reason, to be excluded. * * *"

Section 76, which was evidently designed to provide a method for final establishment of the boundaries of the district and the elimination of lands therefrom which could not be benefited by the project, wholly fails to confer any right upon the landowners to petition for or have their lands excluded from the district because not benefited, or for other reasons; nor does it afford any right to the landowners in the district for a hearing upon the question of the proper boundaries of the district. The directors are given the right to exclude from the district any lands which they may find "cannot be supplied with water from the plant and improvements to be constructed by the district, or for other good reason," and the owners of such lands are given the right of protest to the action of the directors in excluding such land from the district; no other right, however, is given to the landowners. There is no language in this section under which any right is conferred upon the landowners to initiate an inquiry regarding benefits to their lands or boundaries of the district, or any duty imposed upon the directors for a general or special hearing upon that subject.

[2] Appellants contend further that the amendments embraced in chapter 107 of the General Laws of the First Called Session of the Fortieth Legislature 1927 are curative of all the defects urged to the above provisions of the 1925 act. Particularly are we directed to amended section 76 and the added section 76a.

It is to be noted that all of the proceedings with reference to the organization of the district were had prior to the 1927 amendments. If the act under which the district was attempted to be created was void as not affording due process of law to the landowners in the district, we hardly see how this could be cured by a subsequent amendment to the act. However, conceding for the moment that amended section 76 and section 76a are applicable to appellant district, we do not find that those sections are in any way curative of the defects of section 76 above pointed out. The general scheme of amended section 76 is the same as in the original.

Section 76a is limited in its scope to cities, towns, villages, and municipal corporations included within the district, and has no reference to landowners generally.

[3] The still further contention is made by appellants that the district was validated as to boundaries by section 147a, added by chapter 107 of the General Laws of the Special Session of the Fortieth Legislature, which provides:

"All water control and improvement districts * * * as now defined and bounded, the validity of which is not now being contested in any of the courts of this State, are hereby declared to be valid water control and improvement districts and to have the powers and duties defined in and granted by chapter 25 of the Acts of the

39th Legislature of Texas, and as well to have any powers and duties which may be hereafter defined in or granted by any act amending said act."

That act went into effect 90 days after June 7, 1927. This suit was filed August 2, 1927, more than 30 days prior to the time the act became effective. No citation was issued, but defendants voluntarily filed an answer on October 27, 1927. No term of court intervened between the filing of the petition and the filing of the answer, and no question was raised upon the trial of the case in the district court concerning pendency of the suit at the time the act went into effect. In their motion for new trial, appellants for the first time raised the point under discussion, contending that the suit was not pending at the time the act took effect, because no citation had then issued and the clerk had been requested by counsel for plaintiffs not to issue citation. At the hearing on the motion, it was shown by the testimony of defendants' attorney that in the latter part of July, 1927, he had several conversations with plaintiffs' attorney looking to arranging a convenient time to hear an application for temporary injunction. We quote from this testimony:

"I then suggested to him that I did not think it would be necessary to have a temporary injunction issued, as the case would have to be retried at the regular term of the district court, which would meet in October, and, if he wished to pursue this course, I would make no effort to enforce the collection of taxes in the district, by suit, before that time, and that he could file his suit, and I would file an answer for defendants before next term of court. This was agreed to by Judge Taylor (plaintiffs' attorney), who thereupon returned to Dallas and prepared his petition, which he mailed to Mr. Baker for filing."

It was agreed that defendants' attorney "filed an answer herein for defendants on the 27th day of October, A. D. 1927."

The authorities cited by appellants in support of this contention are cases holding that the statute of limitations is not tolled by the mere filing of suit where citation is withheld at the instance of plaintiff. If it be conceded that the same general principles would apply in the case at bar, still we think there is no merit in appellants' contention. The citation was withheld under an express agreement of defendants' counsel that an answer would be voluntarily filed to the next term of court. In fact the suggestion that no steps be taken to obtain a temporary injunction and that defendants would voluntarily file an answer to the next term of court originated with defendants' counsel. Under these circumstances, the contention that the suit was not in fact pending at the time the 1927 act became effective because citation had been withheld at the instance of plaintiffs' counsel is wholly without merit. It may be that

the agreement between counsel, made before the filing of the petition, could not, if repudiated, have been enforced. With that question we are not concerned. That the agreement was made is undisputed. It was afterwards lived up to in every respect, and no delay or loss of time was incurred. It was of advantage to both parties, in that it obviated a hearing on application for a temporary injunction and was a saving of expense in the way of costs to the losing party. Agreements of this sort should be encouraged, and parties making them in good faith should not be penalized. It does not lie in the mouth of appellants to claim an advantage because citation was not issued, when their own attorney suggested and agreed to that course.

The Tarrant county water control and improvement district No. 1, on account of its interest in the questions involved in this appeal, was granted leave to file a written and present an oral argument in this case. In addition to the several contentions stated above, it is urged that, even though chapter 25 of the 1925 act may be held unconstitutional with reference to provisions for the original creation thereunder of conservation and improvement districts, "chapter 25 is still valid in all of its provisions relating to conversion (by section 143) and operation of a district validly created under the provisions of chapter 87, or the provisions of any other act authorizing the creation of conservation and reclamation districts 'heretofore organized, or hereafter to be organized under the provisions of section 59 of article 16 of the Constitution.'"

The question thus presented is not involved in this appeal, and for that reason we express no opinion upon it.

The trial court's judgment is affirmed.

Affirmed.

On Motion for Rehearing.

We have permitted arguments on rehearing to be filed by a number of parties as amici curiæ, on account of their interest in the questions involved. In addition to urging error in the decision announced in our original opinion, these arguments assert that the effect of some of the language used in the opinion is to seriously impair the salability of bonds issued by districts organized under other acts than that under review, and request that it be made clear that our decision only adjudicates the invalidity of the act in question.

We endeavored to point out in our original opinion that we were only construing chapter 25 of the General Laws of the Regular Session of 1925 as applied to districts created under that act as originally passed. We reiterate that statement.

The 1927 amendment to section 19 of the act was not considered in our opinion, for

the reason that the procedure provided in that article had been consummated with reference to the district in question prior to the amendment. For that reason the amendment had no bearing upon the validity of the district.

The procedure provided in section 76 of the act had not been had with reference to the district in question prior to the 1927 amendment to that article; and, while expressing the view that the amendment could not be considered in determining the validity of a previously organized district, we were further clearly of the view that it in no way met the objections to the section as originally enacted. To this view we also adhere.

[4] It is strenuously urged by appellants and several of the amici curiæ that, since districts organized under the 1925 act are public corporations authorized by the Constitution, property owners are not entitled to hearing either as to benefits or boundaries under the due process of law provisions of the state and Federal Constitutions. This question has been foreclosed in this state by a number of decisions. See Dallas County Levee District No. 2 v. Looney, 109 Tex. 326, 207 S. W. 310; Texas & Pac. R. Co. v. Ward County Irrigation Dist. No. 1, 112 Tex. 593, 251 S. W. 212; Trimmier v. Carlton, 116 Tex. 572, 296 S. W. 1070. Especially do we refer to the opinion of Chief Justice Cureton in Rutledge v. State (Tex. Sup.) 7 S.W. (2d) 1071, delivered subsequently to our original opinion in this case. The 1915 Levee District Act (Acts 34th Leg. c. 146) was there under consideration. We read:

"Since the creation of districts to accomplish this purpose is thus authorized by the state Constitution, it follows that the districts to be created must be brought into existence consistent with the law of due process as declared in both the state and Federal Constitutions. Since the districts authorized are local improvement districts, it follows that they must be created either by direct act of the Legislature, by which that body selects the territory and spreads the burden of taxation, or by some legislative agency, such as the commissioners' court; and if by the latter method, then only after notice, hearing, and determination of benefits, and *therefore of boundaries.*" (Italics ours.)

In the very recent case of St. Louis & S. W. Ry. Co. v. Nattin, 48 S. Ct. 438, 72 L. Ed. ——, the Supreme Court of the United States held that a road district created by the police jury of a Louisiana parish was not invalid because the statute under which it was organized failed to provide the taxpayer with proper opportunity to be heard. This decision is based upon the holding that, under the Constitution of Louisiana, the police jury, "subordinate to the state Legislature, is the governing body of the parish," and that a district created by it under statutory authority was on a parity with districts actually created by the Legislature itself.

Whether the commissioners' court is such a governmental body as would meet the requirements of this decision is not essential to a decision of this case. Rutledge v. State, above, clearly holds that it is not. In the 1925 act under consideration, the commissioners' court have no power to define the boundaries of the district, a most essential feature in its creation. We have no doubt of the correctness of our holding in the original opinion to the effect that the districts provided for in this act are "within the general classification of those termed 'local improvement districts.'"

In one of the arguments we are asked in the alternative to "withdraw the decree herein filed on March 29, 1928, and reform the same to declare that said act as the same was until September 5, 1927, was valid as to districts converted into water control and improvement districts under the provisions of section 143 of said act." We fully recognize the force of the argument that the act may be valid as to districts created under prior acts and converted under section 143 of the act in question, although invalid as to districts originally created under it. The question is not before us, however, and anything we might say concerning it would be dictum. As stated in our original opinion, we express no view upon the question, since we have no jurisdiction to adjudicate it.

Our attention is also directed in some of the arguments filed to navigation districts created under chapter 5, General Laws of 1925, Regular Session, and levee districts organized under chapter 21 of the same laws. The first of these acts was declared valid in Smith v. Wilson (D. C.) 13 F.(2d) 1007, opinion by United States District Judge Hutcheson, Circuit Judge Foster, and District Judge Sheppard also sitting. It was therein held that navigation districts come within the decision of Wight v. Police Jury (C. C. A.) 264 F. 705, which is to the same effect as St. Louis & S. W. Ry. Co. v. Nattin, above. The Levee District Act above was declared valid by the Texarkanan court in Preston v. Levee District (Tex. Civ. App.) 3 S.W.(2d) 888.

There are some very marked distinctions between the powers and duties conferred upon the commissioners' court in creating districts under chapters 5 and 21 of the 1925 laws and those involved in the present case, and, while it is not in our province to pass upon the validity of districts created under those acts, we see no analogy, conceding their validity in every respect, between them and the act under review. The scheme of organization is entirely different, and the powers and duties of the commissioners' court as the organizing body are much more expanded than in the act in question. The general scheme of organization of these districts is substantially the same as that under the Levee Act of 1915, held valid in Rutledge v. State, above.

In view of strenuous insistence in the sev-

eral motions and arguments filed to the effect that we have given too narrow a construction to section 76 of the act, and that it should be liberally construed in favor of the act's constitutionality as giving to the property holders the right by implication to a hearing upon boundaries, we call attention to the fact that prior acts (chapter 87, Laws of 1917, and amendments thereto) covering the same character of districts under the same constitutional amendment, and as to which the act in question was made cumulative, expressly provided for the hearings which were in our original opinion held essential to due process of law. These provisions of the prior acts were eliminated from the act in question and presumably designedly so. Under these circumstances we see no force in the argument that the Legislature intended by implication to give to the landowners the very rights which were expressly conferred in the prior acts, but omitted from the act in question. These prior acts have been held constitutional by the Supreme Court in Trimmier v. Carlton, above, wherein, in an elaborate opinion by Chief Justice Cureton the several provisions for hearing by the property owners on the question of boundaries are pointed out. Read, in this connection, sections 16 to 19 of the 1917 act. We cannot believe that the Legislature intended these provisions to be read into the 1925 act in the face of the fact that they were omitted therefrom. We note an apparent inadvertence in the opinion in Trimmier v. Carlton, to the effect that this court held that chapter 87 of the laws of 1917 was invalid. See, in this connection, our opinion in Trimmier v. Carlton, 264 S. W. 253.

The importance of a hearing upon boundaries is forcefully illustrated in the present case. The record shows that the district as delineated in the petition embraced some 69,000 acres, whereas an estimate by engineers indicated that only from 35,000 to 40,000 acres were susceptible of irrigation from the proposed plant. The project contemplated a bond issue of $2,000,000. In the organization election campaign a resolution voted by three of the five directors of the district called attention to the powers of the directors under article 76 of the act to exclude nonirrigable lands from the district, and pledged themselves to exclude such lands.

It is readily discernable that a project which might be feasible for a 69,000-acre district, might from the excessive burden of taxation be impractical for a district of only about half that size. In the larger district the bonded debt would be $30 an acre, and the annual tax (figured on 5 per cent. interest and 2 per cent. sinking fund) would be $2.10 an acre, whereas in a district of 35,000 or 40,000 acres the bonded debt would

be $60 or $50, and the annual tax $4.20 or $3.50 per acre, respectively.

The constitutional provision under which this act was passed places no limit upon the amount of tax burden that may be imposed upon the landowner. In this respect it is unique in this state. The only protection afforded the individual landowner is that found in the due process of law provisions of our state and Federal Constitutions.

When we take into consideration the general scheme of the act whereby only a preliminary district is first created, with no power in the commissioners' court to determine the boundaries, and no right in property owners thereafter to a hearing upon that all-important issue, we are still of the view, expressed in our original opinion, that the constitutional guaranties have not been met.

All motions for rehearing are overruled.

Overruled.